[No. 16593. Department Two. January 11, 1922.]

## A. SMITH et al., Respondents, v. TOWN OF TUKWILA, Appellant.[1]

MUNICIPAL CORPORATIONS (165)—PUBLIC IMPROVEMENTS—CONTRACT —ABANDONMENT BY CONTRACTOR — EVIDENCE—SUFFICIENCY. Where contractors on public work abandon their contract, they thereby create an anticipatory breach which furnishes an excuse for nonperformance on the part of the other party.

SAME (166)—CONTRACT—PERFORMANCE—APPROVAL OR CERTIFICATE OF OFFICERS—NECESSITY. Where it is a prerequisite to the right of a public contractor to recover an installment payment due on a street improvement contract that he shall procure a certificate by the street committee stating the amount earned, a report by one member of the street committee to the town council of what is due the contractor will not excuse the nonproduction of the certificate.

SAME (157, 158)—CONTRACTOR'S BOND—VALIDITY—COMMON LAW BOND. Where a bond taken to secure the faithful performance of a public contract does not comply with the statutory requirements that it have more than one surety and be for the full amount of the contract price, it is nevertheless valid as a common law bond.

PRINCIPAL AND SURETY (3)—EXECUTION OF BOND—BY COSURETY. A surety on a contractor's bond on public work who signs on the understanding that another surety is to be procured, cannot escape liability where the bond is accepted by the obligee with no notice of such condition.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 22, 1920, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Reversed.

*Jones & Colvin*, for appellant.

*Houser & Davis*, for respondents.

MACKINTOSH, J.—Smith and Fielding, whom we will hereafter call the respondents, were the contractors for certain street grading in the town of Tukwila. They furnished a bond, with Lee Monohon, whom we will

[1]Reported in 203 Pac. 369.

hereafter call the bondsman, as surety. This action is to recover from the town damages for the alleged breach of contract.

It was provided in the contract that, on the 16th of every month, the appellant would pay to the respondents, on certificate of the street committee, eighty per cent of the contract price of the work completed during the preceding month. The breach alleged is that appellant failed to pay the installment due on September 16, 1920, which amounted to $800, "as shown by the certificate of street committee", together with certain other sums on account of extra work. It is alleged that, on September 16, demand was made on the appellant, which refused to pay the sums demanded; that demand was then made on the 18th of September and again refused, and at that time the respondents declared the contract forfeited. The Citizens' Bank of Renton, being the assignee of certain laborers' claims, recovered a judgment against the appellant and the bondsman, which had been paid by the appellant under a stipulation that such payment shall be without prejudice to the parties to this appeal.

In the appellant's answer it denies the breach of the contract, and that the amount had been certified, and alleges that, prior to September 16, respondents had quit and abandoned the work and refused to proceed further with it, and, as a cross-complaint, asked for judgment against the respondents and their bondsman, based on the abandonment of the work prior to September 16, the appellant claiming to have been put to the expense of completing the work left unfinished in a sum in excess of the contract price. This cross-complaint was answered by a general denial.

As between the appellant and the bondsman, it is alleged that, at the time of signing the bond, it was the intention that two bondsmen should be secured, and that

the bondsman was told by the respondents that they were not to file the bond until the other surety had signed, and it is therefore claimed that the bond was void.

There are but two questions presented by this appeal: First, which raises a question of fact, is whether the respondents had quit and abandoned the work prior to September 16, when a payment would be due them. This question first makes necessary an examination of the testimony in the case, and to our minds it overwhelmingly preponderates against the findings of the trial court that there had not been such abandonment. A number of citizens, whose credibility is unquestionable, testified that the contractors, prior to September 16, realized that they were engaged in a very unprofitable undertaking and had decided to, and in fact had, abandoned further work on the contract. It is unnecessary to detail all of the testimony which forces this conclusion upon us. It is only denied by the very uncertain testimony of one of the respondents, which denial is attempted to be corroborated by the equally uncertain evidence of two or three employees. Altogether, it is far from satisfactory, and cannot have the effect of overcoming the reasonable and positive testimony to the contrary. The respondents, having repudiated their contract, had created an anticipatory breach of it, which furnished an excuse for the other party not performing its part. *Victor Safe & Lock Co. v. O'Neil,* 48 Wash. 176, 93 Pac. 214; *Calhoun, Denny & Ewing v. Pederson,* 85 Wash. 630, 149 Pac. 25.

Furthermore, upon this first point, the record establishes that respondents have failed to produce or request a certificate from the street committee, which was made by the contract a prerequisite to recovery of the installment due on the 16th of every month, and without such certificates the respondents could not

recover such installments unless the certificates had been unfairly withheld. *Craig v. Geddis,* 4 Wash. 390, 30 Pac. 396; *DeMattos v. Jordan,* 15 Wash. 378, 46 Pac. 402; *Colby v. Interlaken Land Co.,* 88 Wash. 196, 152 Pac. 994; *School District No. 75 v. Qualls,* 95 Wash. 247, 163 Pac. 761. Although the respondents alleged that such a certificate was in existence, this allegation was denied by the appellant, and no proof was produced to show the certificate had ever been issued or demanded. The necessity of producing such certificate is sought to be avoided by the respondents on the ground that one Kline, who was a member of the town council, and also the city engineer and a member of the street committee, had, on September 11, reported to the town council the amount that was then due to the respondents. But such a statement did not purport to be a certificate of the amount due on the 16th. According to the terms of the contract, a certificate was to be made, and surely this statement cannot amount to a certificate signed ''by the street committee'', and there is no evidence that there was any conduct on the part of the appellant which amounted to wrongful, fraudulent, arbitrary or unlawful refusal to allow the certificate to be made on the date called for by the contract. The truth is, that before that date the contract had been abandoned by the respondents.

Passing now to the second question, which involves the liability of the bondsman, it is to be noticed that the bond was furnished with but one surety. Sections 1159, 1159-1, 1160, 1161 and 1161-1, Rem. Code (P. C. §§ 9724, 9725, 9726, 9727, 9728), are in regard to bonds to be required on public work and provide that the town shall require bonds with two or more sureties, or with a surety company as surety, that the contract shall be faithfully performed, and that all laborers, etc., shall be paid, and provide that, when a municipal cor-

poration shall fail to take such bond, it shall be liable to the full extent of the contract liability. They also provide that bonds shall be equal in amount to the full contract price.

The bond here does not meet any of the requirements of the statutes. It had but one surety and was not for the full amount of the contract price. The bond is, therefore, not a statutory bond, and the question is whether it is good as a common law bond. We take it that the statutes cited do not compel the municipality to exact the bond there provided for, but that it may elect to proceed with the work under other guarantees of its performance, taking the risk incident to failure to secure the statutory bond. There is no question that the appellant accepted the bond in good faith at the time it entered into the contract, and, so long as the law does not provide that the municipality shall not take a bond other than that provided for in the statute, or that such bond if taken shall be without effect, we are constrained to hold that the bondsman will be liable as upon the common law bond. *Sears v. Williams,* 9 Wash. 428, 37 Pac. 665, 38 Pac. 135, 39 Pac. 280; *Pacific Bridge Co. v. United States F. & G. Co.,* 33 Wash. 47, 73 Pac. 772. The bond was taken by the appellant without any communication with the bondsman, although it may be true that, when the bond was delivered by the bondsman to the respondents, it was delivered with the understanding that another surety's signature was to be placed thereon before it was submitted to the appellant. *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26; *Baum v. Whatcom County,* 19 Wash. 626, 54 Pac. 29; *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767. A discussion of the cases which relieve persons signing the bond as surety, which has been delivered in such a way that the person receiving it must have

been charged with constructive notice that it was not intended to operate except upon compliance with certain conditions, is unnecessary here because there is nothing in this record that would justify a finding that the appellant either had actual or constructive notice of any conditions alleged to exist in this regard. This rule is recognized and stated in 21 R. C. L. 968, as follows:

"Hence, the rule sustained by the great weight of authority is that the agreement of a surety with his principal that the latter shall not deliver a bond till the signature of another be procured as a cosurety will not relieve the surety of his liability on the bond, although the cosurety is not obtained, where there is nothing on the face of the bond, or in the attending circumstances, to apprise the taker that such further signature was called for, in order to complete the instrument. In such cases the surety, having invested his principal with apparent authority to deliver the bond, is estopped to deny his obligation to the innocent holder, on the principle that where one of two innocent persons must suffer, the loss must fall upon him who put it in the power of the third person to cause the loss."

For these reasons we are compelled to reverse the judgment of the lower court, and to order a judgment entered against the respondents for the amount of the damage occasioned by their breach of the contract, in the sum of $4,932.35, with interest at six per cent from May 26, 1920, the judgment to provide that it shall also run against the bondsman for any surplus after the satisfaction of the judgment entered in this case in favor of the Citizens' Bank, the total liability of the bondsman upon both judgments not to exceed the principal amount named in the bond, to wit, $3,000. The judgment is reversed with award of costs to the appellant.

PARKER, C. J., MAIN, and HOLCOMB, JJ., concur.

HOVEY, J., concurs in the result.