[No. 18820.   Department One.   December 30, 1924.]

WALLACE EQUIPMENT COMPANY et al., *Appellants*, v. C. L. GRAVES, *Defendant*, MARYLAND CASUALTY COMPANY, *Respondent*.[1]

COUNTIES (46)—PRINCIPAL AND SURETY (13-1)—STATUTORY BOND —COMPLIANCE WITH STATUTE—CONSTRUCTION.  A contractor's bond given to a county which fails to provide for the payment of labor and materialmen's claims, and the entire obligation of which is a contradiction of the requirements of Rem. Comp. Stat., §§ 1159-1160, is not a statutory bond, notwithstanding it refers to and makes a part thereof the contract, which provided in terms that the contractor should give a bond conditioned as required by the act, specifying the conditions and referring to the act requiring it (TOLMAN, J., dissenting).

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered June 16, 1924, upon

[1]Reported in 231 Pac. 458.

findings in favor of the plaintiff as against one defendant, in an action on a contractor's bond, tried to the court.   Affirmed.

*Cosgrove & Terhune, Hull & Murray, O. J. Albers, Harmon & Keyes, Paul S. Dubuar,* and *Dysart & Ellsbury,* for appellants.

*Roberts & Skeel* and *J. J. Geary,* for respondent.

Bridges, J.—Lewis county, in this state, and the defendant Graves entered into a written contract by the terms of which the latter agreed to build a certain bridge for something over $29,000.   The contract contained the usual provisions, and, among others, that the contractor should provide and pay for all materials and labor, and that he would give the county a bond running to the state of Washington in the full amount of the contract, conditioned that he would faithfully carry out his contract, and

"for the payment of all laborers' and mechanics' liens and materialmen and all persons who shall supply such person or persons or subcontractors with provisions or supplies for the carrying on of such work, and all just debts, dues and demands incurred in the performance of such work.   It is the intention that said bond shall afford protection to the persons entitled thereto under the provisions of §§ 1159 and 1161, Rem. Comp. Stat. [P. C. §§ 9724, 9727], of the state of Washington, and that in addition thereto said bond shall guarantee the faithful performance of each and all the provisions of this agreement.   .   .   .   "

Subsequently the contractor executed a bond, with the respondent as surety, running to the state of Washington, which is designated as the "obligee."   Its preamble recites that the principal, towit, Mr. Graves, had entered into the contract above mentioned and that a copy thereof was attached to the bond and made a part

thereof "as fully as if recited at length herein." It then continues:

"Now, therefore, the condition of this obligation is such, that if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect; provided however, that this bond is executed upon the following express conditions, the performance of each of which shall be a condition precedent to any right of recovery herein; anything in the contract to the contrary notwithstanding."

The conditions are then set out at length. The first is that the obligee must, within a definite time, give notice of any default on the part of the contractor, and that the surety shall have an opportunity to complete the work or procure others to do it. The second condition is that no claim or suit shall be brought against the surety subsequent to two years immediately following the date of the contract. The third is that the surety shall not be liable for damages resulting from strikes, etc., "nor for the furnishing of any bond or obligation other than this instrument." The fourth requires the obligee to do whatever is reasonable and necessary for it to do under the terms of the contract, otherwise there shall be no liability on the bond, and that no changes in the plans and specifications shall be made. The last condition is "that no right of action shall accrue upon or by reason hereof to or for the use or benefit of any one other than the obligee herein named." The appellants furnished labor and materials to the contractor and, not being paid therefor, filed their claims with the county auditor, as provided by the statute, and then brought this suit to enforce their claims against the bond. At the trial it was admitted that the bond in question is the only one that was

given, and that there was no understanding that any other was to be given, and that the bond sued on was approved by the county commissioners of Lewis county and filed with the county auditor. There was a judgment in favor of the plaintiffs against the defendant Graves, but the case was dismissed as to the respondent surety company.

Sections 1159, 1160 and 1161, Rem. Comp. Stat. [P. C. §§ 9724, 9726, 9727], provide that, when a county or other municipality shall enter into a contract for the making of a public improvement, the contractor shall give a bond to the state for the faithful performance of the contract, including the payment by him of all labor and materialmen's claims, and that such bond shall be approved by the county commissioners and filed with the county auditor, and shall be in an amount equal to the full contract price, and the persons performing labor and furnishing materials shall have a right of action against the bond, and that if any such municipality fail to obtain the bond required, it shall be liable to the laborers and materialmen. The bond here runs to the state but, of course, is for the benefit of the county. It is admitted by all parties that if the instrument sued on be construed to be a statutory bond, then the judgment must be reversed, otherwise affirmed.

The entire operating portion of the bond is contradictory of the bond required by the statute. It not only fails to provide for payment of labor and materialmen's claims, but expressly states that no person other than the county shall have any right of action on it. It does not even recite that it is given for the faithful performance of the work by the contractor, but merely that it is given to "indemnify the obligee (the county) against any loss or damage directly arising

by reason of the failure of the principal to faithfully perform'' his contract. Not only is there not a statutory provision in it, but every word used is a contradiction of the statute, unless it be that the fact that the contract itself was made part of the bond shows an intention to comply with the statute (a matter we will later discuss). In other words, we are considering a bond which not only does not comply with any provision of the statute, but is throughout antagonistic thereto.

The latest case out of this court on the subject is *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2. The same question arose there that is involved here. The bond was given by an employee of the bank. The statute provided that every such employee should give a bond for the faithful and honest discharge of his duties. We held that, because the bond sued on covered the statutory provisions, it was a statutory bond, notwithstanding certain other provisions inconsistent therewith. We said:

"If the bond before us, like the bond in the *Smith* case, [*Smith v. Tukwila,* 118 Wash. 266, 203 Pac. 369] did not meet any of the statutory requirements, there could be no question, of course, that it was not a statutory bond, no matter what may have been the intent of the parties in executing it, and there being no provision in the banking law, or anywhere else in the statutes, forbidding a bank taking a common law bond, it would be construed to be a bond of that nature."

In the *Smith* case, *supra,* we held that the bond was not a statutory one because it was not in the statutory amount and was executed by one surety where the statute provided for two. In *Brown Bros. v. Columbia Irr. District,* 82 Wash. 274, 144 Pac. 74, we held a bond which had more of the statutory elements in it than this one was a common law bond. See, also, *Puget*

*Sound Brick, Tile, etc. Co. v. School District No. 73,* 12 Wash. 118, 40 Pac. 608. We have often held that a bond of this character will be construed most strongly against the surety, and that once it is determined that it was given in compliance with the statute, all statutory provisions will be read into it; but whether it is a statutory bond must be determined by its terms and in the light of the circumstances under which it was given. We cannot hold that a bond is a statutory one merely because the statute requires a certain kind of bond to be given, because we have several times held that the statute does not make the contract void unless the statutory bond be given, and that the county may elect not to take the bond, and in the event of its failure so to do, it will be liable to laborers and materialmen. We are willing to go to a considerable length to hold that a bond is a statutory one, but we cannot so hold where every sentence of it cries out to the contrary.

But let us see what effect that provision of the bond which makes the contract a part of it has. Will the mere fact that the contract provides for a statutory bond make it conclusive that any bond given was intended to be a statutory bond? We think not. The mere fact that the contract was made a part of the bond cannot help the situation; the result would be the same if it were not made a part of it, for we must assume that the surety must have been acquainted with its terms. To hold otherwise would be to hold that a bond is a statutory one simply because the statute provides for a bond of that nature, and that every bond of this nature is a statutory one, regardless of its terms. The surety had a right to give such bond as it pleased and to limit its liability in any manner it saw fit.

It seems to us that the case of *Brown Bros. v. Columbia Irr. District, supra,* is controlling of this question.

There it was held that where the district gave a con-
tract for the construction of an irrigating system and
took a bond, the latter is not to be construed in connec-
tion with the contract which was made a part of it,
where the action was not prosecuted between the
parties to the bond, but by third persons who were ex-
cluded by the terms of the bond, which provided that
no action could be maintained thereon except by the
obligee. In the *Puget Sound Brick, Tile, etc. Co.* case,
*supra,* the contract was made a part of the bond, and
it was contended that the latter should be construed
as a statutory bond because the contract provided for
an instrument of that nature. The case was decided
upon another point, but on this question the court said:

"It may well be doubted whether the contract was
understood to be a part of the bond for any other pur-
pose than to ascertain what was to be secured thereby
to the appellant; that is, to secure the erection of the
building by the contractor in accordance with the plans
and specifications referred to in the contract."

It seems to us that the terms of the bond here posi-
tively negative every idea that it was given to comply
with the statute.

For the reasons given, the judgment is affirmed.

MAIN, C. J., PARKER, and HOLCOMB, JJ., concur.

TOLMAN, J. (dissenting)—I cannot agree with the
majority. In my judgment the question here is a simple
one. The contract between the county and Graves, in
apt and conclusive language, requires Graves to give
a statutory bond. The surety company knew this fact
beyond peradventure, as is demonstrated by the fact
that it attached a copy of the contract to the bond, and
thus established in this case that, following the usual
practice of surety companies, it required a copy of the
contract to be furnished to it before it bound itself.
The contract, so far as the record shows, was never

modified, changed or amended. No other bond was given, or attempted to be given, save the one now before us, and that it was given either in compliance with the terms of the contract or in defiance of such terms cannot be doubted. It is therefore self-evident that either the bond was given with the intent to comply with the contract and by mistake the wrong form was used, or there was, on the part of the surety company, a deliberate attempt to wrong the county and the persons who would have been protected by a statutory bond, and to violate the expressed terms of the contract by furnishing something other than the thing contracted for. Since fraud is not presumed, I conclude that, by an honest mistake, the wrong form was used in writing the bond, but this is no reason why the surety company should be permitted to reap the results of a successfully concealed fraud.

The law provides for the rectification of mutual mistakes and the reformation of instruments in which such mistakes are embodied. I would not read the contract into the bond, necessarily, but I would hold that possession of the contract was actual knowledge of its contents; and knowing what was required the surety company, without the consent of either party to the contract, should not, even by an honest mistake, succeed in palming off a spurious article. The contractor agreed to give a statutory bond; undoubtedly he made application to the surety company for such a bond; all parties intended such a bond should be given, and therefore it is such a bond. Our previous decisions support this view: *Ihrig v. Scott,* 5 Wash. 584, 32 Pac. 466; *Wadsworth v. School District No. 1,* 7 Wash. 485, 35 Pac. 371; *Baum v. Whatcom County,* 19 Wash. 626, 54 Pac. 29; *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2.

The judgment should be reversed.