### 12419

### CRUM *ET UX.* v. JENKINS *ET AL.*

(143 S. E., 21)

1. MECHANICS' LIENS—MATERIALMEN HELD WITHOUT RIGHT OF ACTION ON CONTRACTOR'S BOND LIMITING RIGHT OF ACTION THEREON TO OBLIGEE NAMED.—Where bond given to indemnify owners against any loss or damage arising from contractor's failure to perform contract, and providing that no right of action should accrue on it to or for use or benefit of any one other than obligee therein named, materialmen had no right of action on bond against surety;

NOTE: On right of sureties on contractor's bond, who performs contract on abandonment by contractor, to moneys unpaid on contract as against assignees or creditors of contractor, see annotation in 14 L. R. A. (N. S.), 457; L. R. A., 1918-A, 937; 21 R. C. L., 1114; 3 R. C. L. Supp., 1216.

As to applicability of provision for stipulated damages or penalty for delay in completion of a contract, where the entire contract is abandoned or repudiated, see annotation in 20 L. R. A. (N. S.), 350; L. R. A., 1916-E, pp. 1175, 1179; 8 R. C. L., 577; 2 R. C. L. Supp., 631.

limitation of right of action to obligee being valid and not prohibited by statute or public policy.

2. PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S SURETY HELD NOT LIABLE FOR FORFEITURE TO OBLIGEES COMPLETING WORK ON CONTRACTOR'S ABANDONMENT THEREOF WITHOUT SHOWING THEY ACTED AS SURETY'S AGENT.—Under building contractor's bond providing that, if obligee, on contractor's default, shall complete or relet contract, forfeiture provided in contract against principal shall not operate as against surety; *held* that bonding company was not liable to obligees for forfeiture of $10.00 per day on account of contractor's failure to complete building within time limited, where, on contractor's abandonment of contract, obligees completed building, in absence of showing that they acted under instructions of bonding company and as its agent.

Before MANN, J., Orangeburg, June, 1925. Reversed and remanded.

Action by G. M. Crum and wife against Henry N. Jenkins, the Maryland Casualty Company, and others. From the judgment, defendant last named appeals.

*Messrs. Lide & Felder,* for appellants, cite: *Cases distinguished:* 103 S. C., 69; 104 S. C., 167; 6 Ann. Cas., 465. *Recovery by materialmen on bond:* 236 Fed., 340; 255 Fed., 683; 288 Fed., 187; 126 Atl., 860; 132 S. E., 800; 121 S. E., 756; 90 S. E., 1010; 81 S. E., 418; 13 Fed. (2nd), 833; 15 Fed. (2nd), 253; Ann. Cas., 1916-A, 763; 120 S. E., 617; 122 Atl., 159; 221 S. W., 142; 97 N. W., 72; 85 N. W., 648; 128 N. W., 672; 65 N. E., 747; 123 S. E., 907; 231 Pac., 459; 127 N. E., 472. *The stipulation "and liquidated damages for delay in completing work" applies only where the contractor does the work up to the very time of completion:* 86 Atl., 958; 34 So., 933, 944; 1 Sutherland, Damages, 932; 79 Conn., 482; L. R. A., 1916-B, 1175; 9 S. C., 344; 20 L. R. A. (N. S.), 350; 47 So., 925.

*Messrs. Wolfe & Berry,* for respondents, cite: *"Surety's contract":* 103 S. C., 69; 22 Cyc., 80; 12 R. C. L., 1058, 1059. *Building contractor's bond is a contract of guaranty as well as of indemnity:* 6 Ann. Cas., 465.

*Messrs. John S. Bowman* and *A. J. Hydrick* also for respondents.

*Messrs. Melton & Belser,* for respondent, Columbia Lumber & Manufacturing Company, cite: *Bonding company liable for materials:* 103 S. C., 55; 114 S. C., 207; 104 S. C., 167; 105 N. W., 318; 87 N. E., 976; 27 L. R. A. (N. S.), 573; 163 Pac., 1076; 57 N. W., 531; L. R. A., 1917-D, 722; 53 N. E., 295; 51 N. W., 837; 66 N. W., 828; 4 R. C. L., 56, 57. *Meaning and intent of bond not gathered exclusively from the defeasance clause, considered as a whole:* 76 Fed., 118; 34 L. R. A., 477; 40 U. S. App., 221; 18 Am. Dec., 39; 75 N. W., 632; 67 A. S. R., 310; 45 L. R. A., 321. *Any ambiguities in bond to be resolved against the bond company:* 103 S. C., 55; 114 S. C., 207, 277; 12 A. L. R., 378; 126 N. E., 405. *Right of action under bond cannot be limited to obligee named therein:* Dudley, 332; 1 Rich., 268; 84 S. C., 253; 132 S. E., 800; 90 S. E., 1010.

March 31, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action brought by the plaintiffs, husband and wife, against H. N. Jenkins, a contractor, Maryland Casualty Company, surety upon Jenkins' bond to the plaintiff, G. M. Crum, and a number of creditors who had furnished material to Jenkins, the contractor, for the purpose of having determined the question of the liability of the plaintiffs to the several defendant creditors, and, in the event that their liability be established, for the judgment against the contractor and the Maryland Casualty Company, the surety, for said several claims, and for the liquidated damages fixed by the contract, for the contractor's failure to complete the building within the time stipulated in his contract.

This action is a complicated one; the purpose of it, as outlined, will be better understood by what follows:

The plaintiff, Mrs. Crum, owned a certain lot in the City of Orangeburg; her husband, the plaintiff, G. M. Crum, proposed to build a residence for her upon it. On April

27, 1923, he entered into a written contract with the defendant, Jenkins, to erect the dwelling, for the contract price of $16,500.00, according to specifications, general conditions, and drawings prepared by architects. The contract contained this provision:

"The contractor agrees to give the owner a bond in the sum of $5,000.00, which shall guarantee that contractor will faithfully execute the contract, and will protect the owner against any claim for labor and materials incurred by the contractor in constructing the house."

Accordingly, on May 2, 1923, Jenkins, the contractor, with the Maryland Casualty Company as surety, executed a bond. Its condition was:

"Now, therefore, the condition of this obligation is such that, if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect."

The bond also contained this provision:

"Provided, however, that this bond is executed upon the following express conditions, the performance of each of which shall be condition precedent to any right of recovery hereon, anything in the contract to the contrary notwithstanding."

Here follow a number of conditions, none of which are pertinent to the present inquiry except the fifth:

"Fifth, that no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly, as one of suretyship only.   *   *   *"

The contractor proceeded with the building, and entered into contracts with various persons for the material used in construction. Under the terms of the contract, the building was to be completed by October 30, 1923, and the contract contained the following provision:

"The contractor agrees that the work under this contract shall be substantially completed on or before the 30th day of October, 1923. Should the contractor fail to complete and deliver the building on or before the aforesaid date, he agrees to forfeit to the owner as liquidated damages the sum of ten ($10.00) dollars for each and every day thereafter that the work remains unfinished. Such moneys shall be deducted from any balance due the contractor."

On or about November 10, 1923, the contractor abandoned the job, the work having been substantially but not fully completed. The bond company was notified, and, by agreement of all concerned, the plaintiff, G. Milton Crum, undertook to complete the house at the expense of the bond company, the work being continued by the contractor, the defendant, Henry N. Jenkins, under the supervision of the architects. The cost of completing the house, after it was abandoned by the contractor, was $588.25. Up to the time the contractor threw up the job he had been paid the sum of $13,753.00. As stated, it took $588.25 to complete the house after the contract was thrown up on November 10, 1923; so that in all the plaintiffs have paid the sum of $14,341.25 against the contract price of $16,500.00, leaving a balance due by them of $2,158.75, which they hold in their hands subject to the contract, and the decision of the Court in this case.

In the meantime the contractor had become indebted to materialmen upon the following accounts:

J. P. Coleman, trading as Coleman Lumber Company ............................................. $1,228.27
J. D. Jones, trading as Ayers & Williams ...... 282.60
D. A. Sprinkle ............................... 60.00
Consolidated Granite Company ............... 49.76
Columbia Lumber & Manufacturing Company, Corporation ........................... 818.31
J. W. Smoak ............................... 19.75

W. C. Wolfe ............................          ·7.00
Willie Buchanan· ........................          9.50
W. H. Dukes and W. J. Dawkins, trading as Or-
    angeburg Marble Works ...............          32.30
John McNamara ........................          1,648.62

    All of which aggregate .................$4,156.11
—none of which have been paid. Some of these creditors have taken steps to file mechanics' liens upon the house and lot, and all are claiming the protection of the bond which the Maryland Casualty Company has executed.

The plaintiffs in their complaint deny their liability to these creditors, and deny that any of them have complied with Section 5639, *et seq.*, of Volume 3, Code 1922, relating to mechanics' liens, except the defendant, McNamara, who furnished material to the amount of $1,648.62, by and with the consent of G. M. Crum, and has filed the proper notice of lien therefor.

This statement occurs in the "case":

"The defendants, J. P. Coleman, Columbia Lumber Manufacturing Company, and John McNamara, claim now to have liens upon the dwelling and property of the plaintiffs, the validity of which are issues in this cause. Notices were served on the owners by J. P. Coleman and ·Columbia Lumber Manufacturing Company after the material had been furnished, but not previously, and the consent of the owners had not been obtained. John McNamara furnished material and labor after notice to the owners and with their consent."

The plaintiffs being in doubt as to their liability to the creditors, materialmen, and as to the validity of the liens filed against the property, which they claim to be clouds upon the title of the property, have brought this action to clear up the entire situation by an adjudication: ·

(1) Whether there is any personal liability upon them for the claims of the creditors, materialmen.

(2) Whether the mechanics' liens filed by the defendants, Coleman, Columbia Lumber Manufacturing Company, and McNamara, are valid liens upon the property.

(3) Whether the Maryland Casualty Company is liable under its bond to pay the claims of the materialmen in the event that it should be determined that there is any liability upon the plaintiffs for the claims of the creditors, materialmen, or that the liens filed by them are valid as against the property.

(4) The amount that the Maryland Casualty Company owes them on account of the failure of the contractor to complete the building within the specified time.

The Columbia Lumber & Manufacturing Company answered, asserting the validity of its mechanic's lien. It also set up a counterclaim (?), in which they claim protection under the bond of the Maryland Casualty Company, and ask judgment against it. (Whether this pleading was served upon the Maryland Casualty Company does not appear.)

It does not appear that any of the other defendants filed answers except the Maryland Casualty .Company. That company answered, contesting its liability upon the bond to materialmen.

By agreement of counsel the case was tried by his Honor, Judge Mann, upon testimony taken in open Court before him, at June term, 1925. On August 6, 1925, he filed a decree holding that the Maryland Casualty Company, as surety upon the contractor's bond, was liable to the defendants, materialmen, who had furnished material used in the construction of the house, and to the plaintiffs for $420.00 under Article 2 of the contract providing for a forfeiture of $10.00 per day as liquidated damages for failing to complete the construction within the time limited. His Honor, the Circuit Judge, did not pass upon the questions whether the plaintiffs were under any obligation to pay the materialmen or whether the materialmen had secured liens upon the property. As a matter of fact, it was

not necessary, under his view of the law that the bond company was liable to the materialmen, to pass upon them.

It is admitted that in the list of creditors set out in the decree, the defendant, Coleman Lumber Company, and its claim of $818.31 were inadvertently omitted by his Honor, the Circuit Judge. (The claim of J. W. Smoak, $19.75, set out in the complaint, is also omitted, perhaps for a sound reason.)

The decree adjudicates that the total liability of the bond company is $2,397.41. That figure is arrived at in this way:

The contract price ...................... $16,500.00
Payments to contractor ...........$13,753.00
Completion of building ......... 588.25
Penalty 42 days at $10.00....... 420.00　14,761.25

Balance in hands of owner ............... $ 1,738.75
Amount of claims ..................... 4,136.36

Liability of bond company .............. $ 2,397.61

From this decree the defendant, Maryland Casualty Company, has appealed upon exceptions which present the following questions:

(1) Under the circumstances of this case, has the bond company made itself liable to the materialmen?

(2) Is the bond company liable to the plaintiffs for the forfeiture of $10.00 per day on account of the failure of the contractor to complete the building within the time limited?

I. *Under the circumstances of this case has the bond company made itself liable to the materialmen?*

It is settled by the decisions of this Court in the cases of *Mack Manufacturing Co. v. Massachusetts B. & I. Co.,* 103 S. C., 55; 87 S. E., 439, and *Standard Co. v. Powell Co.,* 139 S. C., 411; 138 S. E., 184, filed April 21, 1927, that, where the bond of a contractor, either by its specifications,

or by the terms of his contract with the owner, incorporated in and made a part of the bond, obligates the contractor to pay the claims of materialmen, the latter have such an interest in the contract and bond as entitles them to the protection of the bond.

The engagements of the bond company in the case at bar are readily distinguished from those of the bond companies in the two cases referred to; the result is a conclusion that the bond company is not liable to the materialmen.

In the *Mack case* the bond company contended:

"The entire transaction shows that the bond was taken for the benefit of the city, and not primarily or directly for the benefit of materialmen; that, if any benefit at all thereunder accrued to the plaintiff, it was incidental only."

The Court said:

"The real and only controversy is about that last stated. So the issue is this: *Do the words of the paving contract and the bond contract manifest an intent to protect those parties* who sold the material to Bowe & Page," the contractors?

That is the touchstone of the issue. The Court then proceeds to glean from the proposal, the specifications, the contract, and the bond ("the words which *manifest the intent of the parties,* and which bind the surety company if it be bound") "interdependent" documents, "constituting one transaction," the intention of the parties to protect the materialmen. The Court says:

"It is conceded by appellant that if the bond was taken for the benefit of the plaintiff, not incidentally but really, then the plaintiff has the right to sue and to recover upon it. That must be judged of by the words of the entire agreement, proposal, contract, specifications, and bond, before adverted to."

—impressing as the Court proceeded, the test of the intention, which was announced at the outset. The court lays special stress upon the words of the bond:

"Now, therefore, should the contractors well and truly comply with all the agreements of their contract and proposal, signed by them and dated August 9, 1910, the said proposal and specifications thereto attached and being a part of the same, and shall fully and promptly pay the wages of all laborers, workmen and mechanics employed by them or their subcontractors on said works, and shall fully and promptly pay all claims of all persons who furnish material and supplies used in the construction of said works, and shall deliver same to the city of Greenville free from all claims. aforesaid, * * * then this obligation to be null and void; otherwise to remain in full force and effect."

And concludes thus:

"We think, therefore, that the parties expressly agreed, and intended to agree, and so wrote it: (1) That Bowe & Page should furnish and promptly pay for the brick; (2) that the bond company should see to that; (3) that the bond company should also see that the laborers were promptly paid; (4) that the contractors, Bowe & Page, should deliver the streets to the city free from any such claims, and (5) and free from claims of other specified sorts."

The *Powell case* practically followed the *Mack case,* and sheds no new light upon the subject.

In the case at bar, there can be no contention as to the proposition that, as in the *Mack case,* the proposal, the specifications, the contract and the bond are so interlaced as to constitute a single transaction; and, as in that case, we must glean *the intention* of the parties from them. Article 12 of the specifications provides:

"Unless otherwise stipulated, the contractor shall provide *and pay for* all materials, labor, water, tools, equipment, light and power, necessary for the execution of the work."

And, as the specifications were made a part of the contract, this article unquestionably imposed upon the contractor the obligation to furnish *and pay for* all material used

in the construction of the house. It does not, however, necessarily follow from the assumption of this obligation that it was other than an engagement between the *contractor* and the *owner,* with which others not parties to the contract are not interested. The character of at least some of the things to be furnished and paid for by the contractor —water, tools, equipment, light, and power—certainly negative the idea that the owner was sufficiently interested in their payment, to specially provide therefor; and, in the light of other provisions in the concurrent, interlaced documents, it will appear clearly that such engagement was only one between the immediate contracting parties.

Article 22 of the specifications provides:

"The owner shall have the right to require the contractor to furnish bond covering the faithful performance of the contract *and the payment of all obligations arising thereunder,* in such form as the owner may prescribe and with such sureties as he may approve."

If the owner had insisted upon a bond of this character, covering an obligation, in addition to that of faithfully performing the contract, for "the payment of all obligations arising thereunder," there would have been some ground for comparing the case at bar with the *Mack* and *Powell* cases; but he did not require such a bond as he might have required.

In *Builders Co. v. Evans Co.,* 204 Mo. App., 76; 221 S. W., 142, the specifications called for a bond "guaranteeing the payment of all valid claims for all labor and material," which clause by reference was read into the contract. The bond was written without this clause. The Court held that:

"It was competent for the school board [the obligee] to waive such provision of the contract. The school board must be regarded as having made such waiver in this case. The bond appears to be purely one to indemnify the obligee against loss, damage, liens, etc. It is true that the preamble of the bond makes reference to the specifications and the

contract, and provides that the contract is made a part of the bond as fully as if recited therein. But it appears that terms of the contract thus called into the bond, could not be properly utilized to contradict or overthrow the express terms of the bond, and that the latter, when conflicting with the former, must control. By its terms, the obligation of the bond is to be void if the obligee is held harmless from claims, liens, etc."

Stronger must be the position of the bond company where the specifications simply afford the owner the *option* to require a bond covering, "to the payment of all obligations arising thereunder"; that is, under the contract and "in such form as the owner may prescribe."

In *Electric Co. v. U. S. F. & G. Co.,* 110 Wis., 434; 85 N. W., 648; 53 L. R. A., 609, it is held that, where a contract with a city for the erection of a lighting plant expressly stipulated that the bond to be given by the contractor for the faithful performance thereof should also be conditioned for the payment by the contractor of all claims for material and labor, the acceptance of a bond without such condition embodied therein is a waiver thereof.

The reason is apparent: The transaction is between the contractor and the owner; the materialman is not a party to it; the materialman comes in, if at all, under the wing of the owner, who may or may not, as he pleases, insist upon protection to the materialman as his own personal desire; if he accepts a bond which does not carry out that desire, the owner has no right to complain, and the materialman who claims under the owner is remediless as against the bond company surety.

Article 4 of the contract:

"The contractor agrees to give the owner a bond in the sum of $5,000 which shall guarantee that the contractor will faithfully execute the contract and will protect the owner against any claim for labor and materials incurred by the contractor in constructing the house."

—which is distinctly and specifically an engagement affecting solely the obligations of the contractor to the owner. This appears still more clearly from the provisions of the bond. The bond provides:

"Now, therefore, the condition of this obligation is such that, if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect."

It also provides:

"Provided, however, that this bond is executed upon the following express conditions, the performance of each of which shall be a condition precedent to any right of recovery hereon, anything in the contract to the contrary notwithstanding: * * * First. * * * Second. * * * Third. * * * Fourth. * * * Fifth. That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly as, one of suretyship only."

If the intention of the parties is to be gathered from all of the interrelated documents, it seems impossible, in the face of a direct and specific provision, that the contract of the surety shall not extend to a "right of action by reason hereof to or for the use or benefit of any one other than the obligee herein named," to conclude that it extended to one who was expressly excluded.

It should be remembered that, even if the specifications, proposal, and contract apparently made provision for the materialmen, the obligations assumed in the bond are specifically made to supersede anything in the contract to the contrary, for the bond provides that the condition set forth in the fifth paragraph shall be precedent to recovery, "anything in the contract to the contrary notwithstanding." The

case is not difficult unless we try to make it different from what it is. We may by construction make other and different contracts than those made by the parties.

The bond in question does not even recite that it is given for the faithful performance of the work by the contractor, but merely that it is given to "indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract."

"Where a bond given to secure performance of a building contract with the state expressly provided that the surety should not be liable to any one except the owner, it was not liable to parties furnishing materials to the contractor for the amount of their claims." In re. Fowble (D. C.), 213 F., 676.

In *Wallace v. Graves,* 132 Wash., 141; 231 P., 458, the contractor's bond was almost if not quite identical with the bond in this case; the fifth provision was identical: "No right of action shall accrue upon or by reason hereof to or for the use or benefit of any one other than the obligee herein named." Held that the bond company had the right to impose such a condition as representing the obligation which it was willing to assume, and that only the obligee had any recourse against it.

In *Brown v. Columbia Dist.,* 82 Wash., 274; 144 P., 74, the bond provided: "That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named"—exactly as in the case at bar. The court held that the bond company was entitled to stand upon the contract which it had made, and that its liability did not extend for the benefit of materialmen.

In *Herpolsheimer v. Hansell,* 141 Mich., 367; 104 N. W., 671, the bond contained this provision: "The surety shall not be liable under this bond to any one except the owner." It was held that the condition was sufficient to

relieve the bond company from liability to materialmen who furnished material to the contractor.

"There are many decisions with us to the effect that, in case of these guaranty bonds or written contracts of indemnity, third persons interested and having claims, though not named, may institute action thereon and recover, *when it appears by express 'stipulation or' by fair and 'reasonable intendment that their rights and interests were contemplated and being provided for.'* " *McCausland v. Brown,* 172 N. C., 708; 90 S. E., 1010.

How is it conceivable that the rights of materialmen were being contemplated and provided for, when the bond specifically declared that their claims were excluded from the liability of the bond company?

"But the principle does not extend to bonds of indemnity in strictness for the owner or obligee named, as where there is stipulation in express terms that the indemnity is for the owner alone." *McCausland v. Brown,* 172 N. C., 708; 90 S. E., 1010.

In *Morganton Co. v. Andrews,* 165 N. C., 285; 81 S. E., 418; Ann. Cas., 1916-A, 763, the bond provided: "The surety shall not be liable under this bond to any one except the owner." It was held that it excluded the claims of materialmen who supplied the contractor.

In *Ideal Co. v. Gentry,* 191 N. C., 636; 132 S. E., 800, it was "expressly stipulated in the bond that it is given to 'indemnify the obligee,' the board of education of Cumberland County, and that 'no right of action shall accrue hereunder to or for the use or benefit of any one other than the obligee.' " It was held that materialmen were excluded from the benefits of the bond so far as the bonding company was concerned.

Many of the cases sustaining the claims of materialmen are in States having a satutory requirement that the contractor's bond provide for the payment of such claims. This not so in this State. Our statutes, however, provide

a simple and effective method by which materialmen may protect themselves. With a few exceptions, possibly only one, the claimants here interested have made no effort to protect themselves. It does not appear that they ever saw the contract or bond or even inquired as to their terms. It can hardly be said that they have foregone the opportunity of protecting themselves by the terms of documents they never saw or even inquired about. If they had inspected the bond, they would have seen at once that it afforded no shelter for them. There might arise, under certain circumstances, a question, as between the owner and the materialmen, whether the owner, having agreed to require a bond for the protection of the materialmen and failed to do so, was responsible to the materialmen, as to which no opinion is intended to be intimated; but it seems certain that, if the owner did fail to do so, the ground of his liability would be predicated upon the immunity of the bond company.

II. *Is the bond company liable to the plaintiffs for the forfeiture of $10 per day on account of the failure of the contractor to complete the building within the time limited?*

Article 2 of the contract provides:

"The contractor agrees that the work under this contract shall be substantially completed on or before the 30th day of October, 1922. Should the contractor fail to complete and deliver the building on or before the aforesaid date he agrees to forfeit to the owner as liquidated damages the sum of ten ($10.00) dollars for each and every day thereafter that the work remains unfinished. Such moneys shall be deducted from any balance due the contractor."

On November 10, 1922, the contractor abandoned the contract, and by arrangement between all parties concerned the owner proceeded to finish the building and did so at a cost of $588.25. At that time the owner had to the credit of the contractor $2,747. Deducting the cost of completion

from the credit balance left in the hands of the owner for the contractor $2,158.75.

His Honor, the Circuit Judge, decreed that the house could have been completed in 42 days and fixed the $10 per day penalty at $420. This he allowed to be deducted from the above balance of $2,158.75, leaving still in the hands of the owner to the credit of the contractor $1,738.75, which is in the registry of the Court for distribution without resorting to the bond.

The bond company contends that the Court erred in charging up this penalty of $420 against it, by reason of the following provision in the bond, and of the admitted fact that that the owner took over the completion of the building after abandonment of the contract by the contractor:

"And if said obligee shall complete or relet the said contract, then any forfeitures provided in said contract against the principal, shall not be operative as against the surety, but all reserves, deferred payments and all other moneys provided in said contract, which would have been paid to the principal had he completed the contract in accordance with its terms, shall be credited upon any claim the said obligee may make upon said surety."

We do not see how the two paragraphs, read together, are susceptible of any other construction than that, where the owner admittedly has taken over the completion of the work, upon its abandonment by the contractor, while entitled to such damages resulting from the abandonment as he may be able to establish, he is precluded from holding the surety company liable for the conventional liquidated damages. Under the express terms of the bond, the owner may establish his damages against the contractor for a breach of the contract, for which he may hold the bond company after crediting the bond company with what "would have been paid to the principal had he completed

the contract in accordance with its terms." Whether he may also recover the penalty from the contractor is a question with which we are not now concerned.

But, aside from the perfectly plain provisions of the bond contract, there is much authority for the position that a provision for stipulated, liquidated damages for delay in the completion of a contract, contemplates a fulfillment of the contract, and does not apply to a breach by abandonment. *Moses v. Autuono,* 56 Fla., 499; 47 So., 925; 20 L. R. A. (N. S.), 350; note to same. *Fidelity Co. v. Robertson,* 136 Ala., 379; 34 So., ·933. *New Haven v. National Co.,* 79 Conn., 482; 65 A., 959. *Rainier v. Masters,* 79 Or., 534; 154 P., 426; 155 P., 1197; L. R. A., 1916-E, 1175, note to same at page 1179. 1 Suth. Dam., 932. *Shields v. Shields Co.,* 81 N. J. Eq., 286; 86 A., 958.

The vital questions in the case, whether the obligee of the bond has suffered loss or damage by reason of the failure of the contractor to faithfully perform the contract, for which the bond company is liable, including the question whether mechanics' liens have been imposed upon the property, and, if so, whether the bond company is responsible to the owner therefor, have not been passed upon by the circuit decree.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for further proceedings not inconsistent with the conclusions herein announced.

MR. CHIEF JUSTICE WATTS, MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE R. E. WHITING concur in result.

MR. JUSTICE STABLER (concurring in result):

While I adhere to the principles announced in the case of *Mack Manufacturing Co. v. Massachusetts Bonding & Insurance Co.,* 103 S. C., 55; 87 S. E.,

439, and in the case of *Standard Oil Co. v. Powell Paving & Contracting Co.,* 139 S. C., 411; 138 S. E., 184, I concur in the result of the opinion of Mr. Justice Cothran that, in the case at bar, the materialmen cannot recover against the bonding company, upon the sole ground that under the terms of the bond itself no right of action accrues upon it to or for the use or benefit of any one other than the obligee therein named. In this State such a limitation of liability is not prohibited by Statute, nor is contrary to public policy.

I concur also in the result of the opinion with respect to the other question discussed and decided therein, that the bonding company is not liable to the plaintiffs for the forfeiture of $10 per day on account of the failure of the contractor to complete the building within the time limited, on the sole ground that the bond provides that, if the obligee, upon default by the contractor, shall complete or relet the contract, then the forfeiture provided in the contract against the principal shall not operate as against the surety. The material question involved is whether the owner was acting for himself or for the bonding company in taking over the completion of the building after the abandonment of the contract by the contractor. If he was acting for himself in the matter, it is clear that the penalty clause provided in the contract would not be operative. If he was acting under the instructions of the bonding company and as its agent, the company would be held to the same liability for liquidated damages as if some other agent had been employed. While it seems that all parties agreed that the owner should complete the building, it is not made to appear that he was acting for the surety company in the matter.

His construction of the bond and the contract made it unnecessary for the Circuit Judge to pass upon certain questions in the case. Under the view taken by this Court, however, these questions are now vital, and should be passed upon by the Court below. Justice Cothran, near

the end of his opinion, points out some of these questions, to which may be added another: Is the surety company responsible to the obligee for all legal claims of laborers and materialmen imposed as a liability upon the obligee by reason of the failure of the contractor to faithfully perform the contract?

The case is remanded to the Circuit Court for further proceedings not inconsistent with these views.

MR. CHIEF JUSTICE WATTS, MR. JUSTICE CARTER, and MR. ACTING ASSOCIATE JUSTICE R. E. WHITING concur.