## ROYAL INDEMNITY CO. v. INDEPENDENCE INDEMNITY CO.

Circuit Court of Appeals, Ninth Circuit. November 12, 1928.

No. 5580.

E. L. McDougal, of Portland, Or., for appellant.

Barry & Morrison and Wilbur, Beckett, Howell & Oppenheimer, all of Portland, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Upon sustaining a demurrer to plaintiff's complaint, the court below entered a judgment of dismissal, from which the plaintiff appeals.

From the complaint and exhibits attached thereto it appears that in districts designated as Nos. 1, 2, 3, 4, and 5, the city of Reedsport, Or., projected certain street improve-

ments, involving, among other things, the making of fills. At the same time the port of Umpqua was desirous of having deepened a section of the Umpqua river channel, and as suitable equipment for such work it was the owner of a suction dredge, derrick, scow, and accessories. By carrying on the two improvements at the same time, the material removed in deepening the river channel could be economically utilized in making the fills. Accordingly the Inland Construction Company secured contracts from the city of Reedsport for the street improvements in the several districts, and also entered into a contract with the port of Umpqua, under the terms of which it obtained the use of the dredge and other equipment, in consideration of its doing certain specified work in deepening the river channel, and also making payment of a stipulated rental.

When the other contracts for the street work were made does not appear, but the one for district No. 1 bears date August 1, 1925. It required a bond from the Inland Construction Company in an amount equal to 75 per cent. of the contract price, "conditioned for the faithful performance of the contract according to the plans and specifications and the original proposal." Accordingly, on August 8, 1925, the construction company, with the defendant, Independence Indemnity Company, as surety, furnished such bond, in the penal sum of $17,742.51, conditioned that the construction company would indemnify the obligee, city of Reedsport, against any loss or damage directly arising out of any failure on its part faithfully to perform the contract. Among other things, the bond expressly provided "that no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any other than the obligee [city of Reedsport] herein named," and further that no assignment of any interest therein or right of action thereon should be made without the prior consent, in writing, of the surety.

The contract between the port of Umpqua and the construction company, dated August 7, 1925, after reciting that the construction company had a contract or contracts for the street work in districts Nos. 1, 2, 3, 4, and 5 in Reedsport, and was desirous of getting the fill material from the channel of Umpqua river, and that the port of Umpqua was desirous of having the channel deepened, and was the owner of the dredge equipment of which the construction company wanted the use, provided for the leasing of the dredge and the deepening of the channel and stipulated the rentals to be paid. It

also required that the construction company should furnish a bond with surety in the penal sum of $15,000, conditioned upon the faithful performance by the construction company of all its obligations under the contract. Accordingly, on the same day, such a bond was given, with the Royal Indemnity Company, plaintiff herein, as surety.

Thereafter the construction company undertook the work as required by its contracts, but failed to make full payment to the port of Umpqua of the rentals for the dredge, and in the course of time the plaintiff was called upon to, and it did, pay a balance of $8,094.08.

Upon the assumption that, under its bond to the city of Reedsport, the defendant was obligated to discharge all obligations to laborers and materialmen for work done for and material used by the construction company in the street work, and that the dredge, having been used in the execution of that contract, is in law to be deemed material or labor, plaintiff brought this action under the theory that the port of Umpqua had the right, had it seen fit so to do, to recover from the defendant the $8,094.08, and that plaintiff, having paid the amount, became subrogated to such right.

While in point of fact the use of the dredge for which the $8,094.08 became due may in some measure have contributed to the street work covered by the contract to which defendant's bond pertains, it is not shown what the contribution was or how the value of the use for that purpose could be determined. As already stated, under the port of Umpqua contract the dredge was to be employed in dredging the channel of the river, and the material so removed was to be used upon the streets in the city of Reedsport, but in five different districts, only one of which is covered by the defendant's bond, namely, the contract herein referred to as relating to district No. 1. For this reason alone we doubt whether the complaint states a cause of action.

But, however that may be, by the very terms of its bond defendant restricted its obligation to the city of Reedsport. To supply an obligation which the bond expressly purports to preclude, plaintiff invokes sections 2991 and 6718 of Olson's Oregon Laws, as amended by the Laws of Oregon for 1923, c. 24. Section 6718 provides that every contract made by the state or any municipal corporation shall contain a condition "that the contractor shall promptly, as due, make payment to all persons supplying to such contractor labor or material for the prosecution

of the work provided for in such contract" and further, that "a penal bond, with good and sufficient sureties, shall be required of each and every such contractor to secure the faithful performance of all the usual or particular obligations of such contract." Section 2991 provides that any person entering into a formal contract with the state of Oregon or any municipality for the prosecution or completion of any work shall be required, before commencing such work, "to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them [with] labor or materials for any prosecution of the work provided for in such contracts." This section further provides that any one who has furnished labor or material for the prosecution of such work for which he has not been paid, may, upon complying with certain specified conditions, secure a copy of the contractor's contract and bond, and maintain suit upon such bond in his own right against the contractor and the surety. Then follows a proviso to which we shall presently advert.

The argument is that, whatever may be the form or language of the bond given by a contractor for the construction of a public work, these provisions of law must be read into it, and held to impose upon the surety the obligations therein defined, even though by the terms of the bond the parties have attempted expressly to preclude them. To sustain this contention, appellant cites Multnomah County v. United States Fidelity & Guaranty Co., 92 Or. 146, 180 P. 104; Fitzgerald v. Neal, 113 Or. 103, 231 P. 645; Philip Carey Co. v. Maryland Casualty Co., 201 Iowa, 1063, 206 N. W. 808, 47 A. L. R. 495; Globe Indemnity Co. v. Barnes (Tex. Civ. App.) 281 S. W. 215; Southern Surety Co. v. Klein (Tex. Civ. App.) 278 S. W. 527; Ingold v. Hickory, 178 N. C. 614, 101 S. E. 525. This position may be conceded to be correct, if the statutory provisions evince such a legislative intent, but not otherwise. That neither the obligor nor the obligee here understood that the bond in question was given in full compliance with the Oregon statutory requirements is too plain to be open to argument.

The only question, therefore, is whether, despite the intent and understanding of the parties, the Legislature has imposed the obligation which plaintiff asserts. We think not; the contrary intent is clearly implied by the latter part of section 2991, which is as follows:

"Provided further, that in case the contractor shall fail to pay for such work and materials, and said officers of the state of Oregon, or any such municipality, county or school district within the state shall fail or neglect to require the person or persons, firm or corporation entering into such contract, to execute such bond, then in that event, if such contract shall have been entered into with the state of Oregon, the state of Oregon and the officers authorizing such contract shall be jointly liable for the labor and materials used in the prosecution of any work thereunder, or in case such contracts shall have been entered into on behalf of any municipality, county, or school district within the state of Oregon, then in that event, such municipality, county, or school district and the officers authorizing such contract shall be jointly liable for such labor and materials to the persons performing such labor and the persons furnishing such materials."

Here is an expressed recognition of the fact that state and municipal officers may fail to take the statutory bond, as in the case here, and in that contingency laborers and materialmen are protected by substituting for the obligations of the surety under such a bond the obligations of the state or municipality and its officers. No reason can be suggested for the insertion of this proviso, if the Legislature contemplated that an obligor would stand fully liable to laborers and materialmen, regardless of the form and terms of the bond given to and accepted by state or municipal officers.

■ Under plaintiff's contention laborers and materialmen would have greater protection in case a statutory form of bond is not taken, for, under such theory, where a statutory bond has been given, they can look only to the surety; whereas, if such bond has not been taken, they may look both to the surety and to the state or municipality and its officers. We are unable to escape the conclusion that by the proviso the Legislature intended that, where the statutory bond is not taken, laborers and materialmen should have the protection of the obligations thus imposed, in lieu of the protection of such a bond. And that would seem to be adequate; but adequacy is a question for the Legislature, and not for the courts.

■ The instrument here not being a statutory bond, defendant rests under such obligations only as are therein expressed or fairly implied. Massachusetts Bonding & Ins. Co. v. Hoffman, 34 Ga. App. 565, 130 S. E. 375; Wallace Equipment Co. v. Graves, 132 Wash. 141, 231 P. 458; Idéal Brick Co. et al. v.

Gentry et al., 181 N. C. 636, 132 S. E. 800; Electric Appliance Co. v. U. S. Fidelity & G. Co., 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609; American Surety Co. v. Small Quarries Co., 157 Ga. 33, 120 S. E. 617; Builders' Material & Supply Co. v. Evans Const. Co., 204 Mo. App. 76, 221 S. W. 142; Morgan v. Salmon, 18 N. M. 72, 135 P. 553, L. R. A. 1915B, 407; Parker v. Jeffery, 26 Or. 186, 37 P. 712.

While there are general expressions in the two Oregon decisions cited by appellant which, if isolated from the facts, have some tendency to support its position, the question here under consideration was involved in neither case. In the Multnomah County Case the bond was in the statutory form, and in the Fitzgerald Case the real questions were whether undertakings in the bond beyond the statutory requirements were enforceable, and whether the plaintiff's claim was within the scope of such undertakings. Without referring separately to the other four cases cited, it is to be said that each arose under different statutory provisions, or involved a bond materially different from the one here in suit, and with the Ingold-Hickory Case should be read the later decision from the same court in Ideal Brick Co. v. Gentry, cited supra.

Affirmed.