[No. 28059.   Department One.   December 16, 1940.]

FRANK GLASPEY et al., *Appellants,* v. JOS. O. DROLET et al., *Defendants,* NATIONAL SURETY CORPORATION, *Respondent.*[1]

D. V. *Morthland* and *Lane Morthland,* for appellants.

*Cheney & Hutcheson* and *John Gavin,* for respondent.

[1] Reported in 108 P. (2d) 375.

MAIN, J.—This action was brought to recover damages for false arrest and assault. The parties defendant named in the amended complaint, which will be referred to as the complaint, were Jos. O. Drolet, John L. Stevens, N. E. Palmer, J. O. Webster, and F. W. Van Arsdol, and the National Surety Corporation.

The trial was to the court and a jury, and a verdict was returned in favor of the plaintiffs and against defendants Drolet, Palmer, and Van Arsdol, in the sum of $1,050, and against Webster in the sum of $350. A judgment was entered in accordance with the verdict, which contained the provision that, upon the satisfaction of the "judgment of $1050.00 the said judgment of $350.00 will likewise be satisfied." The action against the surety corporation was dismissed. From this judgment, none of the defendants appealed, but the plaintiffs appealed from that part thereof which dismissed, with prejudice, the action against the surety corporation.

The facts are these: The appellants, Frank Glaspey and Anna Glaspey, his wife, resided on premises at or near what is called the Nile Mill Camp, in Yakima county. February 4, 1938, five individuals, who are above named as defendants, came to the house and premises of the appellants for the purpose of making a search for contraband elk meat. These individuals were all employed as state game protectors and operated under the direction of Bernard T. McCauley, who was the appointed, qualified, and acting director of the department of game of this state. When these game protectors went to the premises of the appellants, Mr. Glaspey met them at the door of the house, and they stated that they were there to make a search of the premises and showed him a search warrant under which they were proposing to act. He read it and called their attention to the fact that it did not

describe the premises upon which he and his wife were residing. Notwithstanding this, they placed handcuffs upon him, caused him to move some distance from the house, then pushed aside Mrs. Glaspey, who was standing in the door, and proceeded with the search. No elk meat was found. Thereafter, the present action was brought for the purpose above stated.

Upon the trial, the plaintiffs offered in evidence a bond, in which McCauley, as acting director of the department of game, was made the obligee, and the surety upon this bond was the National Surety Corporation, one of the defendants. They also offered in evidence a copy of a letter which the chief clerk of the department of game, one G. C. Brenner, had sent to the state auditor, in which he recited he was enclosing the bond and requested the filing thereof. As stated, these documents were offered in evidence, and, upon objection by the surety company, they were rejected.

The first and principal question upon this appeal is whether the superior court erred in that ruling.

The bond was admittedly purely a fidelity bond upon its face, and not an indemnity bond. Rem. Rev. Stat. (Sup.), § 5891 [P. C. § 2622] (Laws of 1933, p. 42, § 37), which is one of the sections of the game code, provides that all appointees, employees of the state game commission, and the director of game shall give a bond as therein provided. Section 10774 [P. C. § 4-16], under the heading "Official Bonds," provides that every appointive state officer and every employee of the state shall, before entering upon the discharge of his duties or employment, give a bond as therein provided. Section 9933 [P. C. § 511] provides, referring to official bonds, that:

"Whenever any such official bond shall not contain the substantial matter or condition or conditions re-

quired by law, or there shall be any defect in the approval or filing thereof, such bond shall not be void so as to discharge such officer and his sureties, but they shall be bound to the state or party interested, and the state or such party may, by action instituted in any court of competent jurisdiction, suggest the defect of such bond or such approval or filing, and recover his proper and equitable demand or damages from such officer and the person or persons who intended to become and were included in such bond as sureties."

Section 777 [P. C. § 7431] provides that:

"No bond required by law, and intended as such bond, shall be void for want of form or substance, recital, or condition; nor shall the principal or surety on such account be discharged, but all the parties thereto shall be held and bound to the full extent contemplated by the law requiring the same, to the amount specified in such bond. . . ."

It will be noted that § 9933 provides that, when any official bond shall not contain the substantial matter or condition required by law, such condition or conditions shall, in effect, be read into the bond and become a part thereof. In § 777, it will be observed that no bond required by law and "intended as such bond," shall be void for want of form or substance, recital or condition, but that all the parties thereto shall be held and bound to the full extent contemplated by the law to the amount specified in the bond.

The question, then, arises as to whether the bond involved in this action was intended to be an indemnity bond, even though, on its face, it purports only to be a fidelity bond. If it was the intention that it be an indemnity bond, the provision of the statutes above mentioned will be read into it, as already pointed out, and become a part of the bond. Whether it should be construed as an indemnity bond, as well as a fidelity bond, depends, as stated in § 777, upon whether it was

intended to be such. The bond recites that the liability of the surety is limited to

" . . . such losses of the employer as are specified herein, and shall not be extended by implication. This instrument is not intended, and shall not be construed, to be an official or statutory bond of said employees but as a private, common law bond, and shall be available for the protection and indemnity of said employer alone."

The bond does not cover all of the game protectors, and only covered three of those that were involved in the search in this case. How the bond reached the office of the department of game in Seattle, from which it was sent, as above stated, by the chief clerk to the auditor's office, does not appear. As to the letter mentioned, there is no evidence from which it can be concluded that that letter was sent to the auditor's office with either the knowledge or the consent of the surety company. Likewise, there is no evidence from which it can be concluded that the surety company intended the bond to be one of indemnity as well as fidelity. In fact, the evidence leads to the contrary conclusion.

The bond given in this case, as in the case of *Wallace Equipment Co. v. Graves,* 132 Wash. 141, 231 Pac. 458, is entirely contrary to the bond required by the statute.

We recognize the general rules, as stated in the case of *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2, that, in dealing with bonds of a compensated surety, they are to be most strictly construed against the surety where the terms of such bonds are susceptible of more than one construction; and that, in a statutory bond, the provisions of the statute are read into the bond, and, if there are conditions contained in such bond repugnant to the statute, such conditions are to be treated as surplusage.

As above pointed out, these rules have no controlling force in the case now before us, because the bond that

we are dealing with is not a statutory, but a common law, bond. So far as we are informed, there is no statute in this state which prohibits such a bond. The right to give a common law bond has been recognized by this court. *Smith v. Tukwila,* 118 Wash. 266, 203 Pac. 369; *Wallace Equipment Co. v. Graves, supra.*

After the trial, the appellants filed a cost bill, and a motion was made to strike certain items therefrom. The court struck three items, of which the appellants complain. In striking these items, the trial court was clearly right. The claim of error in this regard does not have substantial merit.

The judgment will be affirmed.

BLAKE, C. J., STEINERT, ROBINSON, and DRIVER, JJ., concur.