MAYOR AND CITY COUNCIL OF BALTIMORE, For
the Use of Warren Webster & Company, vs.
MARYLAND CASUALTY COMPANY.

*City Contractor's Bond—Rights of Sub-contractor.*

A provision in the specifications of a city building contract
that, before final voucher for settlement is passed, the contractor
shall deliver to the inspector of buildings certified copies of pay-
ments for all materials and work furnished under the contract,
does not involve an agreement by the contractor to pay all bills,
so as to entitle a sub-contractor or material man to sue on the
bond of the contractor guaranteeing the performance of the
contract in all respects.

*Decided December 4th, 1924.*

Appeal from the Baltimore City Court (Frank, J.).

Action by the Mayor and City Council of Baltimore, for
the use of Warren Webster & Company, against the Mary-
land Casualty Company. From a judgment on demurrer
for defendant, plaintiff appeals. Affirmed.

The cause was argued before Pattison, Adkins, Offutt,
Digges, Bond, and Parke, JJ.

*Rowland K. Adams,* with whom were *Johnson & Adams*
on the brief, for the appellant.

*Walter L. Clark,* with whom were *Bowie & Clark* on the
brief, for the appellee.

Adkins, J., delivered the opinion of the Court.
This appeal is from a judgment for defendant on a de-
murrer to the declaration.

The declaration contained the common counts and three special counts, the latter being identical except that each applied to a different school building. The common counts were struck out by plaintiff before judgment was entered. In each of the remaining counts it is alleged that one William F. Kirwan, trading as The Kirwan Construction Company, entered into a written agreement with the Mayor and City Council of Baltimore, whereby the said Kirwan agreed to furnish the labor and materials for the heating and ventilating apparatus of the designated school, and which said contract provided that the work thereunder should be performed in all respects in accordance with certain plans and specifications therein referred to, a copy of the agreement and excerpts from the specifications being filed with the *narr.* as a part thereof; that in compliance with the provisions of said agreement and said specifications, and in order to secure the faithful performance on the part of said Kirwan of said agreement, the said Kirwan, as principal, and the defendant company as surety, executed a bond, which is set out in full in the *narr.* The bond recites the contract, and the condition of the bond is "that if the above bounden William F. Kirwan shall in all respects comply with the terms and conditions of said contract, and his obligations thereunder including the specifications therein referred to, and made part thereof, and shall indemnify and save harmless the said Mayor and City Council of Baltimore City against or from all costs and expenses, damages, injury or loss to which the said Mayor and City Council of Baltimore may be subjected by reason of any wrongdoing, misconduct, want of care or skill, negligence, or default upon the part of the said William F. Kirwan, his agent or employees, in or about the execution or performance of said contract, including said specifications, and shall save and keep harmless the said Mayor and City Council of Baltimore against or from all losses, costs and expenses to it from any cause whatever including patent infringements in the matter of installing said heating and ventilating apparatus, then this obligation to be

void, otherwise to be and remain in full force and virtue in law."

The *narr.* further alleges that Warren Webster and Company, the equitable plaintiffs, did, at the request of the said Kirwan, furnish certain material to said Kirwan to be used in the performance of said agreement which was used by him in and about the installation of the heating and ventilating apparatus in said schools; that neither the said Kirwan nor any one for him has paid to said Webster and Company any part of the price of said material; that said Kirwan has been adjudicated a bankrupt and the Mayor and City Council of Baltimore has taken over the completion of the said contract; that demand has been made by the equitable plaintiff upon the said defendant as surety on the bond to pay the amount due, but the defendant has failed and refused to pay the same.

In the specifications, under "Bonds," it is provided that "the successful bidder must comply with all of the requirements of section 15 of the city charter (the amount of bond being equal to the amount of the contract price), and the said bond is to be not only a guarantee for the faithful performance of the contract and carrying out of these specifications and drawings, but is also to be a surety to replace any improper work or materials that may become apparent within two years after the work is accepted and is also to save the city harmless from all claims, or loss or damage, in any way or at any time or kind whatever, including patent infringements, whether arising from suits or otherwise in connection with this contract." There is also the further provision under "Bonds" that the contractor shall furnish a new bond on ten days' notice, whenever the surety in the bond shall be deemed by the Mayor to be insufficient or unsatisfactory, in the same penalty and on the same conditions.

Near the end of the specifications, and in no way connected with the provisions as to the bond, there is the following clause under the head of "Payments":

"Payment under this contract will be made monthly at 80 per cent. of the work performed after all work

embraced in this contract is completed.  Should, how-
ever, any expense be caused by which the city shall be
compelled to pay out money on account of neglect or
default of this contractor, all such amounts shall be
deducted previous to payment being made.  Before the
final payment is made all drawings and specifications,
or other instruments of service furnished by the city to
the contractor for the execution of this work, must be
returned to the inspector of buildings.  At the time of
completion and before final voucher for settlement is
passed, the contractor shall deliver to the inspector of
buildings certified copies of payments for all materials
and work furnished under this contract. * * *"

It is the last few lines of the above clause under "Pay-
ments" that gave rise to the contention of appellant.

There is nothing in section 15 of the Baltimore City char-
ter, referred to in the specifications, requiring a provision in
the bond to secure the payment of money due laborers or
material men.  Its requirements as to bond are as follows:

"The successful bidder shall promptly execute a
formal contract to be approved, as to its form, terms
and conditions by the City Solicitor, and he shall also
execute and deliver to the Mayor a good and sufficient
bond to be approved by the Mayor in the amount of the
contract price."

The issues raised by the demurrer, as stated in appellant's
brief, are as follows:  1. Was payment for materials fur-
nished by sub-contractors to Kirwan guaranteed by the bond?
2. Assuming it was so guaranteed, can such sub-contractors
maintain a suit on the bond in the event of default?

In the view we take of the case it will not be necessary to
discuss the second issue.

In discussing the first issue appellant's counsel strongly
and persuasively argues that the provision above quoted from
the specifications, that "at the time of completion and before
final voucher for settlement is passed the contractor shall
deliver to the inspector of buildings certified copies of pay-

ments for all materials and work furnished under this contract," is equivalent to an agreement by the contractor to pay all such bills; and that the bond, which guarantees the performance of the contract in all respects, should be deemed to be in part for the benefit of such sub-contractors. And he cites at least one case, *Lyman* v. *City of Lincoln et al.,* 38 Neb. 794, which supports that contention. But we think a sounder conclusion was reached by the court of Pennsylvania in *Lancaster* v. *Frescoln,* 192 Pa. 452, where there was a similar provision in the specifications. The court there said:

"That the plaintiffs might incidentally be benefited by the city's withholding payment until their claims had been satisfied gave them no right of action."

In most, at least, of the cases where material men have been permitted to recover on such a bond, either a statute or ordinance has required that they should be protected by the bond, or the bond itself has contained such a condition.

In Maryland there is a statute in relation to work on public roads, which provides that "in no case shall any such bond be approved or accepted unless the obligators bind themselves therein to the payment of all just debts for labor and materials incurred by the bidder in the construction and improvement of the road contracted for." Code, art. 91, sec. 36.

We do not mean to say that even with such a statute in force a bond would here be held liable in a suit by a sub-contractor, unless the bond itself contained such a condition. But there is in fact no such requirement in the city charter as to contracts for buildings.

And a careful examination of the record in this case fails to disclose any intention on the part of the parties to the bond to provide for the protection of material men. The apparent purpose of that provision in the specifications is that the city might itself protect the workmen and material men by withholding part of the contract price until it should be satisfied they were either paid, or had, at least, given receipts to the contractor. It might well be that such receipts would be given, as Judge Frank found was a common

practice in Baltimore, without the money having been actually paid by the contractor, to enable him to collect the final payment from the city, with which to settle with them.

As a matter of fact it appears from the *narr.* that the work was not completed by the contractor and the time did not arrive when the provision became effective, and there certainly is nothing in the bond to protect the material man against such a contingency.

As said by this Court in *South. Md. Bank* v. *Nat'l Surety Co.,* 126 Md. at p. 293: "Broad as is the construction now given to such undertakings, it has not been and can hardly be extended so as to reverse the rule that the liability of a surety upon his bond is dependent upon his covenants and agreements."

*Judgment affirmed, with costs to appellee.*