# Wytheville.

## FIDELITY AND DEPOSIT COMPANY OF MARYLAND v. LANDON R. MASON, JR.

### June 17, 1926.

1. SURETY COMPANIES—*Streets and Highways—Contractor's Bond—Legality of Bond—Conditions of Bond—Liability of Surety for Labor and Material.*—Under section 5143 of the Code of 1919, one furnishing labor and material for the construction of a highway under a contract with the State Highway Commission may sue the surety on the contractor's undertaking bond entered into pursuant to the Code of 1924, section 1969-h, for labor and material furnished in or about the construction of the highway. Such a contractor's bond is legal, and may contain any conditions not prohibited by statute.

2. STREETS AND HIGHWAYS—*Contractor's Bond—Action Against Surety Company for Labor Furnished—Determination of Liability of Surety to the State—Moot Questions—Invoking the Jurisdiction of Equity.*— In the instant case, an action for labor against the surety on a road contractor's bond, it was contended by defendant that the proceedings were premature because the liability of the defendant by virtue of such bond to the State of Virginia had not been and could not yet be ascertained and fixed. On appeal it was conceded that there were ample funds, well within the limited liability of the surety company on the bond, to pay all proper claims, including that of the State of Virginia, for additional expense incurred in the completion of the contract upon the default of the contractor.

   *Held:* That upon this concession the question became a moot question; and the court expressed no opinion on it, except to say that as section 5143 of the Code of 1919 authorized the plaintiff to sue on such a bond so made in part for his benefit, "it would seem to follow, that if from the facts and circumstances of a particular case, equity could best administer justice, this is a matter of defense, and the appropriate steps to invoke equity should be taken by the defendant."

3. SURETYSHIP—*Construction of Contract—Special Protection and Consideration for Sureties—Sureties for a Consideration.*—The rule that sureties deserve the special protection and consideration of courts has no application to sureties who become such for a consideration,

and their contract of suretyship should be given such a construction as will effectuate the accomplishment of the real and expressed purpose for which it is given.

4. SURETY COMPANIES—*Road Contractor's Bond—Liability of Surety to Superintendent.*—The condition of a road contractor's bond, made pursuant to Code of 1924, section 1969-h, was that the above bound principal (the contractor) shall in all respects comply with the terms and conditions of the said contract and his obligations thereunder; and to pay for labor and material, incurred by said principal, *in* or *about* the construction or improvement contracted for.

  *Held:* That upon default of the contractor the surety company was liable to plaintiff who was employed by the contractor as superintendent of the work of construction contracted for at a certain salary and expenses. The plaintiff's employment by the contractor was a necessary part in the accomplishment of the purposes of the contract.

5. SURETY COMPANIES—*Liability on Road Contractor's Bond—Analogy with Mechanic's Lien Law.*—While the consideration of mechanic's lien cases may, in many instances, be helpful in determining the liability of a surety for a contractor, that they cannot afford an unfailing criterion by which to measure liability, is apparent from the difference in the object to be attained by the mechanic's lien statutes, on one hand, and the surety bond on the other.

6. SURETYSHIP—*Contractor's Bond—Liability of Surety.*—The rights of those furnishing labor or material depend upon the contract, the performance of which, *"in all* respects" is guaranteed by the bond, and the labor and material furnished is not only, so far as labor is concerned, such as brings sweat to the brow; and, so far as material is concerned, such as becomes an integral part of the completed work, but it includes all labor and material furnished, at the cost and expense of the contractor, necessary to carry out the contract, incurred by the contractor in or about the construction or improvement contracted for.

Error to a judgment of the Circuit Court of the city of Richmond in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*McGuire, Riely & Eggleston* and *Aubrey R. Bowles, Jr.,* for the plaintiff in error.

*Hall, Hall & Peachy,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

On the 9th day of April, 1923, Carson-Davis Construction Company, Inc., entered into a written contract with the Commonwealth of Virginia, acting through the State Highway Commission, for the construction of about 5.2 miles of macadam roadway in Bedford and Amherst counties.

Pursuant to the statute (Michie's Va. Code, 1924, sec. 1969-h), the construction company entered into a contract bond, in the penal sum of $57,725, with the Fidelity and Deposit Company of Maryland as surety, conditioned that the "principal shall in all respects comply with the terms and conditions of the said contract and his obligations thereunder, * * * and shall promptly pay all just claims * * * for labor and material, incurred by said principal in or about the construction or improvement contracted for."

On April 20, 1924, Landon R. Mason, hereafter called plaintiff, was employed as superintendent of the work of construction contracted for, at a salary of $300 per month, expenses, etc., and on August 6, 1924, the construction company failed and went into the hand of receivers. There was a balance due plaintiff at this time of $1,150.50.

On October 13, 1924, plaintiff brought action by notice of motion against the Fidelity and Deposit Company of Maryland, hereafter referred to as surety company, in the Circuit Court of the city of Rich-

mond, and a jury being waived and all matters of law
and fact being submitted to the court, judgment was
rendered in favor of the plaintiff against the surety
company for $1,150.50, with interest from September
1, 1924, and costs.

The surety company moved the court to reverse
and set aside the judgment because it was contrary to
the law and the evidence, which motion the court
overruled. This judgment is before us for review, upon
writ of error duly granted.

There was a stipulation of counsel as to the facts,
the substance of which has been heretofore set out.

There were seven grounds of defense relied on by the
surety company as follows:

(1) The defendant is not indebted to the plaintiff
as alleged in the notice of motion for judgment herein,
or for any amount or on any ground whatsoever.

(2) The contract bond mentioned in the notice of
motion for judgment herein was entered into by the
defendant with and for the benefit of the State of
Virginia only, and bond creates no liability on the
part of the defendant to the plaintiff.

(3) The liability, if any, of the defendant by virtue
of said bond to said State of Virginia has not been, and
cannot yet be, ascertained and fixed. Therefore, even
if any liability existed by the defendant to the plaintiff
under said bond, which the defendant denies, such
liability could not be ascertained at this time, and,
therefore, this proceeding is prematurely brought and
should be dismissed.

(4) No contractual relation has existed at any time
between the plaintiff and the defendant, directly or
indirectly, under the contract bond mentioned in the
notice of motion for judgment herein, or otherwise,
and there is no legal ground, contractual or otherwise,

on which the alleged liability of the defendant to the plaintiff may be based.

(5) Any provisions of said contract bond alleged or supposed to create liability by the defendant to the plaintiff, as alleged herein, were unauthorized by law and are, therefore, invalid and void, and the plaintiff is without rights of any nature thereunder.

(6) Even if the plaintiff would be entitled under any circumstances to any right under or benefit from said contract bond, or any provision thereof, which the defendant denies, the services performed by the plaintiff and the expenses incurred in connection therewith, as alleged herein, were not within the meaning and benefit of said bond, or any provision thereof.

(7) The plaintiff did not render services and incur expenses as alleged in the notice of motion for judgment herein in or about the construction of the road from Big Island to Snowden, in Bedford and Amherst counties, Virginia.

Since the granting of the writ of error in this case all these grounds of defense in an action of this kind, involving the legality of a bond and the construction contract identical with the bond and contract under consideration here, have been decided against the contention of the surety company, with exception of two.

[1] In *Aetna Casualty and Surety Co.* v. *Earl-Lansdell Co.*, 142 Va. 435, 129 S. E. 263, 130 S. E. 235, this court, speaking through Prentis, P., held, in effect, that section 5143, Code 1919, authorized one furnishing labor and material for the construction of a highway under such a contract as this to sue the surety on the contractor's undertaking bond for labor and material furnished in or about the construction of the highway; that such a contractor's bond is legal, and may contain any conditions not prohibited by statute.

Thus all questions raised in the instant case have been decided against the contention of the surety company, except—

1. The prematureness of the action; and

2. The question as to whether the particular services performed by the plaintiff were within the meaning and benefit of the bond or any provisions thereof.

[2] (1) As to the first question, it is conceded now that there are ample funds, well within the limited liability of the surety company on the bond, to pay all proper claims, including that of the State of Virginia, for the additional expense incurred in the completion of the contract. As this ground of defense was based upon the possibility that the claims of the State and of laborers and material men might in the aggregate exceed the penal amount of the bond, that the claims of creditors would have to be prorated, and that this could not be done in an action at law, this possibility no longer exists, and the question, so far as this case is concerned, is a moot question. We, therefore, express no opinion as to it, except to say this, as was said in *Aetna Casualty and Surety Co.* v. *Earl-Lansdell Co., supra.* "Section 5143 authorizes the plaintiff to sue on such a bond so made in part for his benefit," and it would seem to follow, that if from the facts and circumstances of a particular case, equity could best administer justice, this is a matter of defense, and the appropriate steps to invoke equity should be taken by the defendant.

(2) This question involves a construction of the bond and contract as applied to the facts of this particular case. The plaintiff was employed by the contractor at the suggestion and upon the recommendation of the surety company, after the contractor had fallen behind in his work and was without proper equipment

and funds to proceed with it. His time, in addition to superintending the road construction work was taken up in securing proper machinery, having the equipment on hand repaired and in securing funds to meet the weekly payroll. The account upon which he brought action consists of items for salary, money expended for labor in removing and repairing machinery, and for his traveling expenses about the business of his employer.

[3, 4] As has been said, the question as to whether ordinary laborers can sue the surety on such a bond as is here under consideration, and recover for labor performed, is no longer an open question in Virginia, but it is contended that labor for which a surety is liable does not include a general superintendent, and even if it does, the nature of the services actually performed by the plaintiff, in any event, precludes him from recovery against the security. We cannot agree with either contention. When we consider the purpose and provisions of the contract and of the bond by which the surety company is bound, there is no escape from the conclusion that the reason therefor is to get the road built. The rule that sureties deserve the special protection and consideration of courts has no application to sureties who become such for a consideration, and their contract of suretyship should be given such a construction as will effectuate the accomplishment of the real and expressed purpose for which it is given.

The plaintiff's employment by the contractor was a necessary part in the accomplishment of the purposes of the contract, that is, in the construction of the road. It is as necessary to have a directing head in charge of the actual laborer as it is to have laborers to use pick and shovel. Teams and men and material would be

useless with insufficient funds or credit to employ a supervising foreman to utilize the other essential elements of road construction. The intention of the parties in this case and in cases of similar character, was not to restrict protection to a certain class of labor, or a certain class of persons furnishing materials, but the object was to furnish credit to the contractor so that he may be able to secure all classes of labor necessary to prosecute the work and all kinds of material essential to the performance of the work, in order that the contract might be performed, and to this end to protect all persons from whom the contractor might obtain credit for services or wares bearing a sufficiently intimate relationship to the work as to be necessary thereto.

Any other construction than this would make the bond a sham and a fraud.

The condition of the bond, so far as it relates to the instant case, is "that the above bound principal (the contractor) shall in all respects comply with the terms and conditions of the said contract and his obligations thereunder * * * and to pay for labor and material, incurred by said principal, *in* or *about* the construction or improvement contracted for."

The liability of the surety under this bond arose out of the failure of the principal to in all respects comply with the terms and conditions of his contract and his *obligations* thereunder and to pay for labor incurred by the principal, *in* and *about* the construction or improvement contracted for.

The contract binds the principal, "*at his, its or their own proper cost and expense,* to do *all* the work and furnish *all* the equipment, teams and labor necessary to carry out this agreement."

If the principal failed to do these things, and pay

for them, the surety by the terms of its bond was bound to do it. The contractor did not pay the plaintiff for the labor he performed, a labor which, as we have seen, was necessary to carry out the agreement, and the surety is bound to pay.

[5, 6] The surety company seeks to avoid liability to the plaintiff in this case by undertaking to establish an analogy between cases arising under the mechanics' lien law and cases arising under contracts and surety bonds such as we are here considering. It is conceivable, indeed it may be said to be true, that the consideration of mechanic's lien cases may, in many instances, be helpful, but that they cannot afford an unfailing criterion by which to measure liability, is apparent from the difference in the object to be attained by the mechanic's lien statutes, on one hand, and the surety bond on the other. It is contended that some cases deny to one superintending the construction of a building or other improvement the benefit of a mechanic's lien, but the weight of authority is against this contention. (27 Cyc., p. 43 c.) In some jurisdictions an architect is held to be entitled to a mechanic's lien. (27 Cyc. p. 42.) These distinctions, and the shades of opinion of different courts are interesting, but we are concerned with the construction of the bond and contract in this particular case and we think that all the work the plaintiff did, as narrated above, while in the employ of the contractor, was work necessary to carry out the agreement, and the surety company recognized the necessity when it sent the plaintiff to the contractor and virtually recommended him to do the very work he did. Many cases are cited in the briefs, some holding that superintendents and architects are entitled to the benefit of the mechanic's lien statutes, while others hold to the contrary. We deem it unnecessary

to review these cases, for the reason, as heretofore stated, that the rights of those furnishing labor or material depend upon the contract, the performance of which, "*in all* respects" is guaranteed by the bond, and the labor and material furnished is not only, so far as labor is concerned, such as brings sweat to the brow, and, so far as material is concerned, such as becomes an integral part of the completed work, but it includes all labor and material furnished, at the cost and expense of the contractor, necessary to carry out the contract, incurred by the contractor in or about the construction or improvement contracted for. The labor of the plaintiff meets all these requirements. He has not been paid in full for this labor, the contractor is insolvent, and the bond of the surety company is in "full force and virtue."

North Carolina is one of the States which holds that a superintendent of construction is not protected by the mechanic's lien law (see *Stephens* v. *Hicks,* 156 N. C. 239, 72 S. E. 313, 36 L. R. A. [N. S.] 354, Ann. Cas. 1913A, 272), but the Supreme Court of North Carolina, in determining the liability of a surety on a bond and contract providing for the payment for labor, seemed to have no trouble in differentiating between the right to the lien in one case and the liability of the surety to pay the superintendent of construction in the other.

In *Scheflow* v. *Pierce,* 176 N. C. 91, 93, 97 S. E. 167, 168, the court said: "The first clause in the contract with Pierce is, that he should furnish *at his own expense* all the material, labor and equipment necessary to do the work. He furnished the same but not at his own expense, and a great part of the labor done on the job is yet unpaid for, including the plaintiff, and the condition of the bond is broken. *It would be strange*

*if the plaintiff, who did practically all the work on the job, should not have recourse to the bond for the amount due him, solely because he did the work with a machine instead of his own hands or by hiring laborers to work with their hands.''*

In the case of *Banker's Surety Co. of Cleveland, Ohio, et al.* v. *Maxwell,* 222 Fed. 797, 138 C. C. A. 345, the Federal Circuit Court of Appeals, Fourth Circuit, Ohio, held that one employed by a contractor to superintend the construction of a public building whose duties require him to act as a working foreman, is a "person supplying labor," within the meaning of the act of August 13, 1894, c. 280, 28 Stat. 278, as amended by the act of February 24, 1905, c. 778, 33 Stat. 811 (Com. St. 1913, sec. 6923), and is protected by the contractor's bond given thereunder.

See also *Brogan* v. *National Surety Co.,* 246 U. S. 261, 38 Sup. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, and the cases referred to therein. These cases are especially helpful in indicating the attitude of the U. S. Supreme Court in the construction of the bonds involved in those cases. The court holds that such bonds are to be more liberally construed than cases involving the mechanic's lien statutes, and that they should be so construed as to effect the purpose of the statute. (Federal Public Works Act.)

Our conclusion, therefore, is that plaintiff's claim comes within the obligations of the bond, and that the trial court properly rendered judgment in his behalf.

*Affirmed.*