# Richmond

## The Century Indemnity Company, A Foreign Corporation v. Esso Standard Oil Company, A Foreign Corporation.

January 25, 1954.

Record No. 4150.

Present, All the Justices.

The opinion states the case.

*Woodrum, Staples & Gregory* and *Paxson, Marshall & Smith,* for the plaintiff in error.

*Hunton, Williams, Anderson, Gay & Moore; H. Merrill Pasco, Robert P. Buford, Jr.* and *Thomas B. Gay,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The city of Charlottesville entered into a written contract dated June 7, 1950, with Lehman-Hoge and Scott, a partnership, herein referred to as the contractor, for the construction and installation of a pipe line for the transmission of natural gas. On the same day the contractor, as principal, entered into a bond to the city, as obligee, with the appellant, The Century Indemnity Company, as surety thereon. Esso Standard Oil Company, the appellee, furnished to the contractor for use on the job certain materials of the value of $2,005.23, for which the contractor did not pay Esso. The installation of the pipe line was completed by the contractor to the satisfaction of the city, which paid the contractor the full amount due under the contract without notice of Esso's claim against the contractor. Esso brought this action against Century and obtained a judgment for the amount of its claim.[1]

---

[1] By an amended motion for judgment Esso asserted liability against the city, in defense of which the city claimed it had made settlement before having any notice of Esso's claim. The court held that no case had been made against the city which could be supported by the law and the evidence, and the city was accordingly dismissed.

On this appeal Century contends that the bond was solely for the benefit of the city, the obligee named therein, and that no action thereon accrued to Esso.

Esso asserts that the bond and contract are to be read together, and that when this is done an intention is disclosed to protect suppliers and materialmen such as Esso, thereby making Esso a third party beneficiary entitled to maintain this action under § 55-22 of the Code.[2]

The bond provides that the contractor, called the principal, and Century, called the surety, are held and firmly bound unto the city, called the obligee, in the sum of $90,000, the principal having entered into a written contract dated June 7, 1950, with the obligee for the construction of a natural gas transmission line, "which contract is hereby referred to and made a part hereof, as fully as if recited at length herein.

"Now, THEREFORE, The condition of this obligation is such, that if the Principal [contractor] shall indemnify the Obligee [city] against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect.

"PROVIDED, however, and upon the Express Conditions, the performance of each of which shall be a condition precedent to any right to recovery hereon:" following which the conditions are set forth in six numbered paragraphs, those pertinent here being summarized or quoted in full as follows:

FIRST: In event of any default on the part of the principal, a written statement describing same shall be given to the surety, and the surety shall have the right within thirty days thereafter to proceed with the performance of the contract,

---

2 § 55-22. " * * if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, * * such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. * * ."

whereupon all money due at the time of the default or thereafter to become due to the principal shall be paid to the surety, which shall be subrogated to all rights of the principal.

\*     \*     \*     \*     \*     \*     \*

"FIFTH: That the Obligee [city] shall faithfully perform all the terms, covenants and conditions of such contract on the part of the Obligee to be performed; and shall also retain that proportion, if any, which such contract specifies the Obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, than ten per centum of such value), until the complete performance by the Principal of all the terms, covenants and conditions of said contract on the Principal's part to be performed; \* \* .

"SIXTH: That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the Obligee [city] herein named; nor shall any interest herein or right of action hereon, be assigned without the prior consent, in writing, of the Surety."

The written contract between the city and the contractor did not require the execution of a bond, and there is no statute in this State which required its execution, such as § 33-101 of the Code and § 11-20 as amended, 1952 Cumulative Supplement, require with respect to certain contracts with the State and its agencies. The circumstances of the execution of the bond are not disclosed but it is very clear from the parts quoted, and there is nothing in any part of the bond itself to indicate otherwise, that it is a bond to idemnify the city alone, not a performance or labor and material payment bond such as this appellant also issues. Taken by itself this bond does not purport and cannot be construed to promise anything to Esso as a supplier of material to the contractor.

But the bond provides that the contract is made a part of it as fully as if recited at length therein. The bond and the contract therefore are to be construed together to

determine the character and extent of the obligations assumed by the surety; and if when so read and construed together it thereby fairly appears that it was the intent and purpose of the parties at the time the bond was executed that suppliers and materialmen were to be protected by the bond, then the judgment complained of must be sustained.

Esso relies on Article III, § 21, and Article IV, § 12(3)(d)(e), of the construction contract and the Fifth condition of the bond to establish such purpose and intent.

Article III, § 21, of the contract provides that the contractor shall "promptly and satisfactorily settle all claims for labor, equipment, materials and supplies, and for all damage claims of every nature, which it is obligated to pay hereunder, and to furnish affidavits or other suitable evidence satisfactory to the Company [city] that all such claims have been settled. * * ."

Article IV, § 12(3)(d)(e) provides that the city shall retain 20% of the contract price for work done until final settlement is made, and after final completion and acceptance of the work, and the city has been furnished satisfactory evidence that all bills for labor, equipment and materials and all claims payable by the contractor have been paid or settled, the amount retained shall be paid to the contractor.

The Fifth condition of the bond is quoted above.

The argument of Esso runs thus: These provisions of the contract that the contractor should pay for the materials and that the city should retain part of the contract price until all bills for materials had been paid, did not benefit either the contractor or the city; therefore, the only persons for whose benefit they could have been intended were the suppliers of materials, such as Esso; Century's bond was given to assure that the undertakings of the contract would be fully performed; Century recognized the undertaking to protect materialmen when in the Fifth condition of the bond it conditioned its liability on the city's performance of its undertaking to retain part of the contract price until completion of the contract; the intention to protect material-

men thus disclosed was inconsistent with the Sixth condition of the bond limiting right of action on the bond to the city; and that on the principle that the bond and contract must be construed most strongly against Century and there being a conflict between the covenant of the contract and the condition of the bond, the condition, *i.e.*, that only the city could sue, should be disregarded.

The inferences and presumptions on which this conclusion is reached are, we think, too uncertain and too fragile to survive against the weight of the clear and specific provisions of the bond.

It is true that the contractor promised to pay the suppliers of material, but it does not follow that the promise did not benefit the city, the obligee in the bond. Prompt payment by the contractor for materials and labor was an important element to the city in the satisfactory conclusion of the work within the time limit fixed by the contract. The contractor agreed to employ as far as practicable unskilled labor residing in the locality and the city would be materially interested in the payment of the labor bills. But regardless of that, the promise to pay was made by the contractor to the city, not by Century to the city. Century's bond was not that the undertakings of the contract would be fully performed, but that it would indemnify the city against loss or damage directly resulting from the failure of the contractor faithfully to perform.

Nor can it be said that the Fifth condition of the bond that the city should retain part of the contract price constituted a recognition by Century of an obligation to protect materialmen. By the first condition of the bond Century was given the right to take over the work on the contractor's default, in which event the amount so retained was to be paid to Century. That condition of the bond was not for the benefit of materialmen whom the contractor owed, but for the benefit of Century in the event of the contractor's failure to finish the job.

Esso relies on *Hipwell* v. *National Surety Co.*, 130 Iowa

656, 105 N. W. 318, and *New Amsterdam Casualty Co.* v. *A. Wirtz Transfer Co.*, (Ohio App.), 34 N. E. (2d) 258. But in the former the contractor covenanted to pay for all labor and materials and the condition of the bond was that the contractor should perform all the terms and conditions of the contract. It was held that the provision in the contract, not in the bond, that no person "whose name is not at this time disclosed, shall be admitted to any share of this contract, or to any benefit to arise therefrom" was repugnant to the contract itself and therefore void. In the latter case the opinion states that "the bond contains an express promise to pay the laborers and materialmen;" and "if we are correct in our construction of this bond it contains not only a promise to indemnify the obligee, but also an express promise to pay the laborers and materialmen."

So in the case of *Daughtry* v. *Maryland Casualty Co.*, (4 Cir.), 48 F. (2d) 786, referred to in the briefs, there was no provision in the bond like the Sixth condition of Century's bond; the contract required a bond conditioned not only to indemnify the city, but also to guarantee the faithful performance of the contract and the payment of labor and materialmen. The bond itself was conditioned that if the contractor complied in every respect with the contract and indemnified the city against all suits arising out of the work or for materials used therein, then the obligation would be void. It was held that both the surety and the contractor "gave the bond to the city with the statement in writing attached thereto that same was to be given, and was given, to guarantee payment for labor and materials." 48 F. (2d) at p. 788.

There were no such undertakings in the present bond. Its condition was only to indemnify the city against loss or damage directly resulting from the failure of the contractor to perform; and it was executed with the express condition, stated in its Sixth clause, that no right of action should accrue thereon to anybody other than the city.

In an Annotation in 77 A.L.R. 21, on the subject of the

rights of laborers and materialmen to recover on contractors' bonds, the author with obvious logic thus comments at page 77:

"The courts seem to be generally agreed that a laborer or materialman cannot recover on a contractor's bond to the owner, unless the parties to the instrument contemplated some benefit to such third parties; and the trend of the decisions is to make the rights of laborers and materialmen dependent upon an intention of the parties to protect them. * * It would be difficult to imagine a more unequivocal mode of negativing any such intention to benefit third parties than an express stipulation in the instrument to the effect that it is for the sole benefit of the obligee named therein."

*Massachusetts Bonding & Ins. Co.* v. *United States*, 265 Ky. 661, 97 S. W. (2d) 586, is in point. There the contract provided that the contractor should pay for all materials, labor and equipment, and should furnish bond for the faithful performance of the contract and the payment of all obligations arising thereunder. But the only condition of liability in the bond that was executed was that if the principal should indemnify the obligee against loss or damage directly arising by reason of the failure of the principal to perform, then the bond would be void; and the bond provided that no right of action should accrue thereunder to any one other than the obligee. The court said that while the bond and contract were to be read together to ascertain the intention of the parties, if the parties directly concerned limited the liability of the surety, that limitation must be regarded, and it was held that the parties directly interested had the legal right to make the contract they did make and those who afterwards furnished material to the contractor could not successfully claim that it should have been different.

In *Crum* v. *Jenkins*, 145 S. C. 177, 143 S. E. 21, the contract required the contractor to give bond for the faithful performance of the contract and to protect the owner against claims for labor and materials. The bond that was executed was on condition that the principal indemnify the obligee

against loss or damage directly arising by reason of the failure of the principal faithfully to perform the contract and provided that no right of action should accrue thereon to any one but the obligee. The court said the intent of the parties must be gleaned from the contract and the bond; that the contract unquestionably imposed upon the contractor the obligation to pay for all material, but that it did not necessarily follow that this was other than an engagement between the contractor and the owner with which others not parties to the contract were not interested. Holding that the bond did not protect materialmen, the court said:

"If the intention of the parties is to be gathered from all of the interrelated documents, it seems impossible, in the face of a direct and specific provision, that the contract of the surety shall not extend to a 'right of action by reason hereof to or for the use or benefit of any one other than the obligee herein named,' to conclude that it extended to one who was expressly excluded." 145 S. C. at p. 189, 143 S. E. at p. 25.

See also *McCausland & Co.* v. *Brown*, 172 N. C. 708, 90 S. E. 1010; *Kentucky Rock Asphalt Co.* v. *Fidelity &c. Co.*, (6 Cir.), 37 F. (2d) 279, 77 A.L.R. 4; *Mayor, Etc.* v. *Maryland Casualty Co.*, 146 Md. 508, 126 A. 880; *Southern Surety Co.* v. *United States &c. Co.*, (8 Cir.), 13 F. (2d) 833.

In *Ideal Brick Co.* v. *Gentry*, 191 N. C. 636, 132 S. E. 800, the contractor agreed to pay for all materials and labor. There was no provision in the contract for a bond, but a State statute required a bond conditioned for the payment of all labor and materials. A bond was executed for the faithful performance of the contract conditioned that the principal indemnify the obligee for loss sustained by failure to comply with any of the terms of the contract, and providing that no right of action should accrue thereon to any one other than the obligee. The court observed that recoveries on the part of third parties, usually labor and materialmen, though not expressly named in the bond, are

generally sustained where it appears by express stipulation that the contractor has agreed to pay the claims of such third persons, or where by fair and reasonable intendment their rights and interests were being provided for and were in the contemplation of the parties at the time of the execution of the bond. It was then held that it appeared from the terms of the bond that it was not given in view of the requirements of the statute for the protection of the plaintiffs, materialmen or to insure the faithful performance of the contract as it related to them and they were not entitled to recover. This that was said in the opinion is applicable here:

"Here the contract contains the express stipulation that 'the contractor shall provide and pay for all materials, labor, etc., necessary for the execution of the work,' but the obligation of the bond is not for the faithful performance of the contract as it relates to the plaintiffs; the surety agrees to idemnify the obligee, and no one else, against all loss that the obligee may sustain by reason of the principal's failure to comply with any of the terms of the contract, and all other persons are expressly excluded from its protective provisions. * * It is a principle too well established to require the citation of authorities that, 'as a party consents to bind himself, so shall he be bound.' * * ." 191 N. C. at p. 639, 132 S. E. at p. 802.

Similarly the obligation assumed by Century in this bond was not for the faithful performance of the contract as it related to Esso, but to indemnify the city against loss or damage directly arising from the failure of the contractor to perform, and with the express condition that no right of action should accrue to any one other than the city. When the contract and the bond are read together, Century is found to have assumed no obligation additional to those assumed in its bond, and none inconsistent with the express limitation of its liability. By no fair construction of these instruments can it be said that it was the intention of the

parties at the time of the execution of the bond that Century should thereby become liable for the debts of the contractor to the suppliers of material for the work.

The undertaking of a compensated surety is to be liberally construed in favor of the assured, and where a bond is reasonably susceptible of two constructions, the one more favorable to the claimant will be adopted. *Fidelity & Co.* v. *Mason,* 145 Va. 138, 133 S. E. 793; Annotation, 77 A.L.R. at p. 42. Even so, the liability of such a surety upon its bond is dependent upon its covenants and agreements and, in the absence of a statutory requirement, courts will not read into a bond an obligation which it does not contain. *Mayor, Etc.* v. *Maryland Casualty Co., supra; United States* v. *Starr,* (4 Cir.), 20 F. (2d) 803.

The judgment below is reversed and final judgment for the appellant will be entered here.

*Reversed and final judgment.*