KERMIT E. FERRER, demandante y recurrido, *v.* ALLIANCE COMPANY OF P.R., INC., y ST. PAUL FIRE & MARINE INSURANCE CO., demandados y esta última recurrente.

*Número:* R-64-244        *Resuelto:* 4 de enero de 1966

2

*Rivera Zayas, Rivera Cestero & Rúa,* abogados de la recurrente; *Luis A. Lugo, Jr.,* y *L. C. Delucca,* abogados del recurrido.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente ·de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El acelerado ritmo en la construcción de obras públicas y privadas durante las últimas décadas ha requerido la continuada atención de este Tribunal en la interpretación de los términos de las fianzas prestadas para asegurar el cumplimiento de los contratos y el pago de la mano de obra y de los materiales utilizados en su ejecución. En *Cristy & Sánchez* v. *ELA,* 84 D.P.R. 234 (1961), apartándonos de nuestras

interpretaciones anteriores (¹) fundadas en la inexistencia de relación contractual entre los fiadores y los proveedores de materiales y mano de obra, sostuvimos que las fianzas requeridas por el Estado en un contrato de *obra pública* tienen el propósito de liberar al soberano de cualquier reclamación directa por la falta de pago de los materiales suministrados o la mano de obra usada en la obra, y que, cuando bajo los términos del contrato se le permite al contratista ceder o subcontratar parte de la obra, el subcontratista puede recobrar de la fianza prestada a favor del Estado el precio de los materiales y mano de obra que haya utilizado o empleado en la ejecución del subcontrato. (²) En el área de la construcción de *obras privadas, A. L. Arsuaga, Inc.* v. *La Hood Const. Inc.*, 90 D.P.R. 104 (1964), comienza a elaborar la norma local. Luego de invocar el segundo párrafo del Art. 1209 del Código Civil, 31 L.P.R.A. sec. 3374, así como la glosa de interpretación uniforme sobre las estipulaciones en beneficio de tercero, adoptamos, citando del *Restatement, Security,* § 165, la norma de que cuando el fiador de un contratista hace depender su obligación del pago por éste de los materiales utilizados y mano de obra empleada, o garantiza al dueño la obligación del contratista de pagar por éstos, quienes suministran materiales o mano de obra tienen una causa de pedir contra el fiador como terceros innominados beneficiarios, *"a no ser que de los términos del contrato de fianza surja que el fiador no le responde a estas personas."* (Énfasis nuestro.) En *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964)—contrato de *obra pública*—extendimos la responsabilidad de una compañía fiadora en cuanto al pago

---

(¹) *Batlle* v. *Pereyó*, 67 D.P.R. 662 (1947); *Morales* v. *Chabert*, 43 D.P.R. 119 (1932) y *Municipio de Fajardo* v. *Axtmayer*, 31 D.P.R. 823 (1923), fueron expresamente revocados.

(²) En la actualidad el derecho de los obreros y materialistas a reclamar contra la fianza prestada con motivo de un contrato de *obra pública* es indiscutible, irrespectivamente del texto de la fianza, pues existe una disposición estatutaria expresa que lo permite. Ley Núm. 388 de 9 de mayo de 1951, 22 L.P.R.A. secs. 47 *et seq.*

4

a un subcontratista bajo una fianza cuyo texto no hacía expresa referencia al pago de materiales y mano de obra, sino al fiel cumplimiento—ejecución—de las estipulaciones, términos y condiciones del convenio. Y en *Goss* v. *Structural Concrete Products*, 92 D.P.R. 391 (1965), resolvimos que una fianza que garantizaba el pago de materiales y mano de obra respondía del pago por alquiler de un equipo y su transportación hasta la *obra privada*.

Se presenta ahora una nueva modalidad de fianza que antes no habíamos considerado.[3] Veamos los hechos.

La Alliance Company of P.R., Inc., subcontrató la instalación del alcantarillado y otros servicios tales como la plomería, el sistema de protección contra fuegos y los calentadores en el proyecto para la construcción de 311 unidades en un edificio de 14 pisos conocido como El Monte, cuya ejecución fue adjudicada a la H.R.H. Construction Co. En 26 de septiembre de 1961 se suscribió una fianza por la Alliance, como principal o fiada, y la St. Paul Fire and Marine Insurance Co., como fiadora, a favor de H.R.H. Construction Co., como beneficiaria, cuya cláusula vinculante lee así:

"Por tanto, es condición de esta obligación que si el Principal [Alliance] ejecuta fielmente la obra contratada bajo el Subcontrato y paga, o hace pagar totalmente, las reclamaciones de todas las personas que presten labor o suplan materiales, aparatos, equipo o energía que contribuya directamente a la ejecución del Subcontrato, entonces esta obligación será inoperante; de lo contrario, será válida y efectiva."

Esta obligación se contrajo, sujeta, entre otras condiciones, a la siguiente:

"Tercero: No se concederá ninguna causa de acción en beneficio de otra persona que no sea el beneficiario designado [H.R.H. Construction Co.] y los derechos del beneficiario bajo la

---

[3] Advertimos que en la discusión que sigue se considera a un subcontratista en su relación con el contratista como un materialista u obrero. *Restatement, Security*, § 165, comentario "f".

presente fianza no podrán ser cedidos o transferidos sin el previo consentimiento escrito de la Fiadora." (3a)

Kermit E. Ferrer, subcontratista de Alliance, presentó una demanda contra ésta y la St. Paul en reclamación del balance del precio adeudado por la construcción del alcantarillado pluvial y el sistema de distribución exterior de agua en el proyecto mencionado. Oportunamente solicitó sentencia sumaria fundándose en el documento de fianza. Para acreditar la existencia y subsistencia de la deuda, unió copia certificada de la relación de deudas admitidas por Alliance en un procedimiento de quiebra así como una declaración jurada del actor. Expresamente se alegó que aunque en la fianza la obligación se convino a favor de la H.R.H. Construction Co. y que la cláusula tercera transcrita precedentemente limita a dicha beneficiaria el ejercicio de cualquier causa de acción, Ferrer puede alcanzar la responsabilidad contraída en virtud de la fianza "por ser un tercero a favor de quien se ha estipulado un beneficio." La compañía fiadora radicó un escrito de oposición. No acompañó contradeclaraciones. Se dictó la sentencia sumaria solicitada apoyándose el Tribunal de instancia en *Arsuaga* v. *La Hood,* supra, y *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, supra, y de paso afirmando que la cláusula tercera limitativa del derecho al ejercicio de una causa de acción bajo los términos de la fianza era "nula e inoficiosa". Para tal aserto no se citó autoridad alguna.

---

(3a) El texto original de estas cláusulas es como sigue: "Now, Therefore, The Condition of This Obligation is Such, that, if the said Principal [Alliance] shall faithfully perform the work contracted to be performed under the Subcontract and shall pay, or cause to be paid in full, the claims of all persons performing labor upon or furnishing materials, appliances, teams or power contributing directly to the performance of the Subcontract, then this obligation shall be void, otherwise to remain in full force and effect."

"Third: That no right of action shall accrue hereunder to or for the use or benefit of any other than the Obligee [H.R.H. Construction Co.] as named herein, and the rights and interests of the Obligee hereunder may not be assigned or transferred without the prior written consent of the Surety."

■ Uniformemente se ha resuelto que la condición incorporada a un documentó de fianza limitando el ejercicio de cualquier reclamación al beneficiario designado—acreedor lo llama el *Restatement,* supra, § 165—establece claramente que las partes no intentaron extender sus beneficios a terceros innominados. *Hopper Bros. Quarries* v. *Merchants Mutual Bond Co.,* 255 F.2d 147 (8th Cir. 1958), y casos citados a la pág. 148; *Westinghouse Electric Corp.* v. *Mill & Elevator Co.,* 118 N.W.2d 528 (Iowa 1963) ; que cita con aprobación, pero distingue, el caso normal de *Bourrett* v. *W. M. Bride Construction Co.,* 84 N.W.2d 4 (Iowa 1957) ; *Century Indemnity Co.* v. *Esso Standard Oil Co.,* 79 S.E.2d 625 (Va. 1954), y casos citados a las págs. 629 y 630; *Massachusetts Bonding & Ins. Co.* v. *United States R. Corp.,* 97 S.W.2d 586 (Ky. 1936). Véase también, 17 Am.Jur.2d *Contractor's Bonds* §§ 21, 81 y 83.

*Arsuaga* v. *La Hood,* supra, no sostiene un resultado contrario, pues como indicamos al comienzo de esta opinión, después de exponer, citando el *Restatement,* supra, la regla, general determinativa de responsabilidad a favor de los materialistas y obreros, expresamente hace la salvedad de que ello es así "a no ser que de los términos del contrato de fianza surja que el fiador no le responde a tales personas". El comentario (a) del *Restatement,* a la pág. 459, expresa que "El fiador no es responsable a los obreros y materialistas, aun cuando garantice al Estado o al propietario particular que el contratista sufragará el importe de la mano de obra y los materiales, si el fiador limita su responsabilidad contractual al acreedor con quien contrata. Generalmente, el fiador sólo está obligado bajo los términos del contrato, y si excluye el propósito de beneficiar a terceros, no habrá terceros beneficiarios. . . ."

En la anotación *"Right of person furnishing material or labor to maintain action on contractor's bond to owner or public body, or on owner's bond to mortgagee",* 77 A.L.R. 21,

77, se expone la regla prevaleciente en las siguientes palabras:

"Los tribunales están de acuerdo en que los obreros y los materialistas no pueden reclamar contra la fianza prestada por el contratista a favor del dueño a menos que las partes hayan contemplado algún beneficio para dichos terceros; la tendencia de las decisiones es que cualquier derecho de los obreros y los materialistas depende de la intención que hayan tenido las partes de protegerlos. *Sería difícil concebir una forma más inequívoca de negar la intención de proteger los terceros que una estipulación expresa en el documento de fianza al efecto de que es para el exclusivo beneficio del beneficiario nombrado.* En consecuencia, se sostiene, que, en ausencia de un estatuto, los obreros o materialistas no pueden dirigirse contra la fianza de un contratista cuando ésta dispone expresamente que es para beneficio exclusivo del dueño, o que solamente él puede presentar una acción para reclamar bajo sus términos."

*Metropolitan Casualty Ins. Co.* v. *Texas Sand & Gravel Co.*, 68 S.W.2d 551 (Texas 1954), expone a nuestro juicio, la mejor doctrina aplicable a la situación que consideramos. Tratábase allí de una fianza suscrita por la Metropolitan Casualty Insurance Co., que garantizaba a Leach, un contratista, que el subcontratista Murdoch cumpliría bien y fielmente todos los términos y condiciones del subcontrato y que pagaría todas las reclamaciones por mano de obra empleada y materiales suministrados para la ejecución de dicho subcontrato. Sólo se permitía demandar al subcontratista. Strain, quien suplió mano de obra, demandó, entre otros, a la compañía fiadora en reclamación por los servicios prestados. Dijo el tribunal:

"Debe observarse que en la fianza no se menciona a Strain [el suplidor] como beneficiario, y que dicha fianza no dispone expresamente que se suscribe para beneficio de otra persona que no sea Leach [el contratista]. Los suplidores de mano de obra y materiales sólo pueden haber sido hechos beneficiarios en virtud de la cláusula de incumplimiento (*defeasance*) de la fianza, que provee que si Murdoch [el subcontratista] 'paga todas las

reclamaciones por mano de obra y materiales suplidos . . . entonces esta obligación será ineficaz'. *El efecto de esta cláusula de incumplimiento depende de la intención de las partes.* Para determinar tal intención, se atribuye un gran peso a la cuestión de si dicha provisión era o no necesaria para la protección completa del beneficiario designado. *Si tal disposición era necesaria para la protección completa del beneficiario nombrado, generalmente se interpreta que la fianza es una de indemnización o reembolso para su único beneficio.* (Citas) *Si la disposición transcrita no era necesaria para la protección del beneficiario nominado,* la fianza, bajo determinadas circunstancias, *puede interpretarse que redunda en beneficio de los obreros y materialistas."* (Énfasis nuestro.)

Dicho en otra forma, para favorecer la interpretación de que la fianza solamente protege al contratista debe existir la posibilidad de que éste sufra una pérdida pecuniaria con motivo del incumplimiento de la obligación asumida por el fiador de pagar a los obreros y materialistas, *Rowe* v. *Stufflebeam,* 89 N.W.2d 875, 879 (Iowa 1958); explicando el citado caso normal de *Bourrett* v. *W. M. Bride Construction Co.,* supra, y en ausencia de tal perjuicio económico, el lenguaje de la fianza debe extenderse para favorecer a los beneficiarios gratuitos, *American Surety Co. of New York* v. *Smith,* 130 So. 440, 443 (Fla. 1930).

Todas estas doctrinas han surgido debido a la existencia en las jurisdicciones estatales de legislación estableciendo gravámenes (*liens*) para beneficio de los operarios (*mechanics liens*) y de los suplidores de materiales. *Wolverine Insurance Company* v. *Phillips,* 165 F.Supp. 335 (D.N. Iowa 1958); *Restatement, Security,* pág. 459. El propósito de las fianzas es generalmente proteger al dueño en caso de que, al incumplir el contratista, se viere obligado a satisfacer el importe adeudado por materiales adquiridos para la obra y salarios devengados. Sólo así se asegura que su propiedad estará libre de gravámenes, y por eso, para prevenir un perjuicio económico o una pérdida, se protege mediante la

exigencia al contratista de una fianza. En Puerto Rico, por la interacción del Art. 10 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 279 (Supl. 1964, pág. 203), [4] y la Sec. 1 de la Ley Núm. 73 de 4 de mayo de 1931, 29 L.P.R.A. sec. 186, [5] se establece un gravamen para beneficio de los obreros en la industria de la construcción. No existe igual protección para beneficio de los materialistas, [6] y, por ende, ningún riesgo corre el dueño de la obra si a éstos no se les satisface el importe de los suplidos, a no ser la limitada responsabilidad que emana del Art. 1489 del Código Civil, 31 L.P.R.A. sec. 4130, preceptivo de que "Los que ponen su(s) . . . materiales en una obra ajustada alzadamente por el contratista, no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación." Pero claramente esta disposición no

---

[4] "En las obras de construcción, reconstrucción, reparación o mejora de propiedad, por ajuste o precio alzado, y en cualquier trabajo en que intervengan contratistas, subcontratistas, ajustadores, maestros de obra o cualquier agente o representante del patrono, el empleado también tendrá derecho a la compensación adicional a base de tipo doble de salario que fija esta Ley para horas extras de trabajo.

"En estos casos, el propietario, o la persona para quien se haga la obra o realice el trabajo, con el contratista, subcontratista, ajustador, maestro de la obra, agente o representante del patrono, serán solidariamente responsables del pago de los salarios devengados en horas regulares y horas extras de trabajo; . . . ."

[5] "Siempre que un obrero o empleado trabajare en la construcción, ampliación, conservación o reparación de cualquier obra, casa o edificio, el importe total de los salarios que devengare por razón de su trabajo constituirá un gravamen sobre dicha propiedad, tanto en los casos de trabajos realizados bajo la inmediata dirección del propietario como en aquellos en que intervengan contratistas, subcontratistas, ajustadores o maestros de obras."

"Este gravamen gozará de preferencia en cuanto al pago sobre todas las demás deudas del propietario, con las excepciones establecidas por la ley."

[6] En Minnesota, estado de origen de la fiadora, la ley establece gravámenes tanto en favor de los obreros como de los materialistas, M.S.A. § 514.01, pero el contrato de fianza se rige por la ley local, *Maryland Casualty Co.* v. *San Juan Racing Assoc., Inc.*, 83 D.P.R. 559, 565 (1961).

expone a ningún deterioro patrimonial. Resolvemos, por tanto, que respecto a los materiales utilizados en la obra, la condición limitativa en cuanto al ejercicio de la causa de acción por el dueño no enerva la eficacia de la estipulación contraída en virtud de la cláusula vinculante a favor de los terceros beneficiarios o beneficiarios gratuitos.

■ Aplicando el mismo razonamiento a lo adeudado por concepto de mano de obra, y en vista de la existencia para el dueño del riesgo del gravamen de operarios, se impondría una solución distinta, pues la garantía se interpreta para beneficio únicamente del beneficiario nominado. No obstante, otra circunstancia invade el cuadro de los hechos que puede conducir a un resultado distinto. Mediante la Ley Núm. 111 de 22 de junio de 1961, 29 L.P.R.A. secs. 195 *et seq.* (Supl. 1964, pág. 135), que entró en vigor 90 días después de su aprobación, o sea, en 20 de septiembre de 1961, se requiere la prestación a "[t]odo contratista a cargo de la construcción, reconstrucción, ampliación, alteración o reparación de una obra, edificio o construcción cuyo costo estimado. . . sea mayor de $15,000 . . . [de] una fianza de pago (*payment bond*) a favor del Secretario de Trabajo . . . para garantizar el pago a los obreros y empleados del contratista *de los salarios que se devenguen en la obra*." Más adelante dispone el Art. 5, 29 L.P.R.A. sec. 197 (Supl. 1964, pág. 136) que "Cualquier persona que tenga una relación contractual directa con un *subcontratista y que tenga o no relación contractual expresa o implícita con el contratista de la obra, tendrá una causa de acción* contra el contratista, *la fianza del contratista,* los fiadores del contrato, o contra cualquiera de ellos, para recobrar la totalidad o cualquier parte de cualquier cantidad que pueda adeudarse por el subcontratista de la obra por concepto de salarios devengados como empleado del subcontratista de la obra". Es cierto que esta ley por sus propios términos parece conceder el derecho a demandar a los obreros, pero a los fines de la responsabilidad bajo la fianza ya hemos

resuelto que el subcontratista que en la ejecución de su subcontrato suple y paga la mano de obra, ocupa la misma posición que un obrero. Ya en *Cristy & Sánchez v. ELA*, supra, a la pág. 239, habíamos anticipado que cuando la fianza es exigida por disposiciones expresas de una ley, la descripción de las partes realmente garantizadas no debe buscarse aisladamente en el documento de fianza, sino considerando éstos en unión a los términos del contrato y la disposición estatutaria. Y añadimos, "En casos de pólizas requeridas en virtud de disposición estatutaria, el estatuto se considera que forma parte de la misma." Por ello, en el presente caso, si *en virtud de los términos del subcontrato* de Alliance dicho subcontrato comprendiera como una de las obligaciones asumidas la del cumplimiento de las leyes aplicables, la condición de la cláusula tercera tantas veces mencionada tendría que ceder ante la ley que concede una acción directa a los que suministran mano de obra para un contrato. La limitación sobre el derecho a demandar no podría prevalecer, e independientemente de la intención de las partes para excluir de sus beneficios a los terceros, se impondría la solución decretada por la ley.

La fianza en el caso de autos se prestó en 26 de septiembre de 1961, cuando ya estaba vigente la Ley Núm. 111. Ahora bien, como en el incidente de sentencia sumaria se omitió presentar el subcontrato en relación con el cual se prestó la fianza, no estamos en condiciones de determinar, sin riesgo de equivocarnos, el alcance de la misma, a la luz de la ley y las obligaciones contractuales asumidas.

*Se dejará sin efecto la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 21 de octubre de 1964, y se devolverá el caso para ulteriores procedimientos consistentes con esta opinión.*